ORIGINAL

GARY VICTOR DUBIN 3181
Dubin Law Offices
55 Merchant Street, Suite 3100
Honolulu, Hawaii 96813
Telephone: (808) 537-2300
Facsimile: (808) 523-7733
E-Mail: gdubin@dubinlaw.net

Attorney for Plaintiff
Kevin Milnes

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 2 4 2006

at ___l l o'clock and ___l min. P M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEVIN MILNES,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) CIVIL NO. 02-00365 BMK<br>)<br>) PLAINTIFF KEVIN MILNES'<br>) **MEMORANDUM IN OPPOSITION** TO<br>) DEFENDANT'S MOTION TO DISMISS<br>) OR, IN THE ALTERNATIVE, FOR<br>) PARTIAL SUMMARY JUDGMENT RE:<br>) VA CLAIMS; EXHIBITS "A" AND "B";<br>) CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>) DATE:    May 12, 2006<br>) TIME:    2:00 p.m.<br>) JUDGE:   Barry M. Kurren<br>)<br>)<br>) Trial Date: October 16, 2006<br>) |

**PLAINTIFF KEVIN MILNES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY
JUDGMENT RE: VA CLAIMS**

ORIGINAL

This is a lawsuit brought under the Federal Tort Claims Act ("FTCA") against Defendant United States of America for medical malpractice committed by Tripler Army Medical Center ("Tripler") *and* the Veterans Administration ("VA"), for violations of medical standards of care, which jointly and/or severally resulted in physical damage and injury to Plaintiff Kevin Milnes, as specifically alleged in the Complaint.

This is Movant's second such Motion To Dismiss and/or for Summary Judgment.

Earlier, on June 22, 2005, Movant filed a virtually identical motion, which was thereafter abruptly withdrawn following full opposition briefing by the Plaintiff.

It is noteworthy at the outset that this new Motion differs from the previous one in only one respect.

In Movant's earlier Motion, it was alleged that the Plaintiff's formal administrative claim against the VA was flawed, because the Plaintiff supposedly had not stated a definite dollar amount within the Government's form complaint.

That wrong-headed allegation, fully answered by the Plaintiff in his earlier opposition papers, has now thankfully been completely abandoned by Movant, and replaced instead with an equally meritless allegation that the Plaintiff's claim against the VA is allegedly void, this time because it is supposedly one for "benefits" only, and not for "medical malpractice."

That replacement argument, we are told, is based solely upon a July 27, 1999, letter written to the Department of Veterans Affairs by the Plaintiff, set forth in Exhibit "A" to the moving papers, and also as Exhibit 4 attached to Plaintiff's opposing Declaration, which recites, as one basis for his claim, "Section 38 USC 1151."

There are two reasons why that new allegation should be similarly disregarded.

First, as Movant, in its own accompanying, moving memorandum at 9, correctly points out, in reviewing such issues, "the court will determine the 'substance' of Plaintiff's claim by addressing the merits of the complaint, independent of titles given to

2

the claims by Plaintiff," and a complete reading of the Complaint, as well as the Plaintiff's voluminous contemporary correspondence, reveals that the Plaintiff is charging both Tripler and the VA with medical malpractice, each having failed to properly treat his condition, as succinctly explained in Plaintiff's opposing Declaration:

> 17. It is not true that my claims are only against Tripler. My primary care was at the VA. I was referred to Tripler for surgery only, and all mistakes in my after-care, which aggravated my condition, such as the failure to provide needed, follow-up medication, home nursing care, and infection specialists were examples of the medical malpractice committed by the VA while I was on out-patient status.

> 18. The difference between being denied "benefits" and being subjected to "medical malpractice" by the VA was the fact that I was already a patient of the VA, eligible and receiving benefits for my condition, having been referred to Tripler for surgery only, while ill and still in the medical care of the VA.

Second, even were that July 27, 1999, letter to be narrowly read to be a claim for "benefits" only, that would still be irrelevant for this case anyway, since the Plaintiff did separately file a valid administrative claim with the VA for medical malpractice, apart from that July 27, 1999, letter, rendering the VA's reliance upon that July 27, 1999, letter misfocused and misspent.

Thus, once again, as before, stripping away the various layers of obfuscation, Movant's entire Motion, its moving memorandum, at 11, is seen to really rest once again on the single repeat assertion, without reference to a single case authority no less, that the Plaintiff "never exhausted his administrative remedies as he never filed an administrative claim with the VA in which he alleged negligent medical treatment by a VA employee acting within the scope of his/her employment with the VA. There is no evidence that the Department of Veterans Affairs was ever presented with a proper FTCA claim and processed this claim, unlike the Department of the Army."

Paragraphs 4 through 15 of the Declaration of Kevin Milnes, quoted below, documented by the referenced Exhibits accompanying his Concise Counter-Statement of Material Facts, disprove that bare, self-serving assertion by the VA's Mr. Miyamoto (who nevertheless continues to parrot, while ignoring all of the contrary evidence, that the Plaintiff supposedly did not submit a valid Standard Form 95 to him):

> 4. As a result, on July 19, 1999, I filed written negligence claims against both Tripler and the VA, respectively; a true and correct copy of my written claim submitted by me to the VA on Standard Form 95 is set forth in Exhibit 2 attached hereto, addressed to the attention of Miles Miyamoto, VA Senior Attorney.

> 5. The very next day I wrote again to the Chief of Staff of the Department of Veteran Affairs' Regional Office in Honolulu, by letter dated July 20, 1999, supplementing my Standard Form 95 Claim against the VA, elaborating as to the deficient standard of care that I had and still was experiencing, a true and correct copy of which is set forth in Exhibit 3 attached hereto.

> 6. Again on July 27, 1999, I reiterated the information contained in my letters of July 7 and July 20, 1999, *supra*, by this time writing to the Department of Veterans Affairs' Medical Regional Office in Honolulu, to the attention of John Montgomery, a true and correct copy of which is set forth in Exhibit 4 attached hereto.

> 7. During the last six months of 1999 I continued to speak with and request assistance from claims representatives of both Tripler and the VA, who informed me that they were working together to evaluate my respective, related claims.

> 8. By letter dated January 21, 2000, a true and correct copy of which is set forth in Exhibit 5 attached hereto, Mr. Miles Miyamoto for the first time mailed me a new, blank two-page Standard Form 95, informing me that he did not deem my submission against the VA to be in proper form, contending that I had not named the VA employee responsible for my injuries and that I did not include a sum certain in the initial submission for money damages.

> 9. On January 24, 2000, I therefore replied to Mr. Miyamoto, sending him my original Standard Form 95 with its Statement In Support Of Claim again attached thereto (Exhibit 2), together with his additional, requested Standard Form 95 again filled in, this time containing the amount of $2,000,000 as the amount of my claim, a

true and correct copy of which is set forth in Exhibit 6 attached hereto.

10. The reason why I did not include the amount of my claim in my initial submission was that I was seeking a physical examination to determine the extent of my injuries, for which reason I noted "C&P" in Box 12.b in my initial Standard Form 95, thereby requesting same be conducted first (Exhibit 2).

11. I faxed my January 24, 2000, submission directly to Mr. Miyamoto, and I also faxed a copy to Tripler, I also mailed the original to Mr. Miyamoto, and I hand carried a copy that afternoon to Mr. Gary Vincent at the VA Administrative Office right next door to Tripler, located at the time on the ground floor, having just moved its office there, since I had been speaking with both Mr. Miyamoto and with Ms. Laura L. Waterman, Medical Claims Attorney for Tripler in Honolulu, who had informed me that they were working together to evaluate my claim.

12. After faxing Mr. Miyamoto his copy, I immediately telephoned Mr. Miyamoto in order to be certain that he had received my fax; he told me that he had not, so I faxed it to him again, and he called me back to confirm that he did finally get my fax that day.

13. Thereafter, I heard nothing further from the VA regarding my negligence claim, so I continued to send the VA additional claim forms, for example, on June 25, 2001, specifically submitting further evidence of my injuries, a true and correct copy of which is set forth in Exhibit 7 attached hereto, on October 18, 2002, specifically complaining about not having been yet informed as to the status of my claim, a true and correct copy of which is set forth in Exhibit 8 attached hereto, and on November 7, 2002, specifically asking for help to mitigate the injuries, a true and correct copy of which is set forth in Exhibit 9 attached hereto. Still no response from the VA.

14. I thereafter requested my medical records from Tripler and the VA, and as a part of that document production from Tripler I subsequently received a copy of my second, submitted "$2,000,000" Standard Form 95, *supra*, bearing a Tripler "received" stamp and the sending fax number known to me of Ms. Waterman, proving that it had been previously in fact sent by me in response to Mr. Miyamoto's January 21, 2000, letter, *supra*, and faxed around the administrative system at least within Tripler, a true and correct copy of which is set forth in Exhibit 10 attached hereto.

15. I continued to press my claim against and to the VA; for example: on December 20, 2001, I faxed the VA General Inspector in Washington, D.C., reiterating my claim, a true and correct copy of which is set forth in Exhibit 11 attached hereto; on May 2, 2002, I similarly faxed VA Director David Burge, with copies to Gary Nakamura of the DAV, and to Congresswoman Patsy Mink, and to U.S. Senator Daniel Inouye, a true and correct copy of which is set forth in Exhibit 12 attached hereto; and eventually Representative Mink wrote on March 13, 2002, on my behalf to Mr. Burge, *supra*, pleading my case, a true and correct copy of which is set forth in Exhibit 13 attached hereto.

Given such detailed disagreement, mixed with such resulting evidentiary issues of credibility, were the Court to give any weight whatsoever to Mr. Miyamoto's unsubstantiated recollections, summary judgment, especially in the context of an FTCA claim, would still be everywhere precluded; see, for instance, Wehrman v. United States, 830 F.2d 1480 (8th Cir. 1987) (dispute as to claimant's knowledge regarding surgery issues precluded summary judgment); De Witt v. United States, 593 F.2d 276, 7th Cir. 1979) (in medical malpractice action, VA's contention that claim was time-barred rejected in summary judgment proceedings, given the presence of triable issues of fact disputed between the parties); Exnicious v. United States, 10th Cir. 1997) (in medical malpractice action, summary judgment improper where there exist disputed issues of fact concerning when claimant knew of malpractice); Joplin v. United States, 74 F.R.D. 4 (E.D. Okla. 1976) (in medical malpractice action disputed issues of material fact pertaining to timely presentation of claim to VA precluded summary judgment).

And, as to Movant's fall-back assertion that, even if the Plaintiff had filed a timely claim with the VA, no VA employees were named by him therein, such an argument not only, if true, would not have anything to do with the statutory timing of the filing of an FTCA claim (see statute set forth in Exhibit "A" attached); and that assertion is nowhere listed as an administrative requirement in the Code of Federal Regulations (see pertinent sections of the Code of Federal Regulations, set forth in Exhibit "B" attached).

Plaintiff's claim against the VA has to do, on the other hand, both with negligent acts *and* with *negligent omissions* to properly provide needed care for him under the circumstances, and while he remained under the VA's medical supervision, for which he had already been certified as benefit-eligible, beginning with his misdiagnosis at the VA Clinic (the attending physician having been named in his numerous complaints to the VA, for instance, *ad nauseam*, contrary to Mr. Miyamoto's contrary assertions), and continuing during the VA's failure to provide satisfactory after-surgery care for the Plaintiff following his butchered gall bladder surgery – which in case of omissions, for instance, FTCA complainants need name only the agency as opposed to naming any individual employees anyway according to the established case law, <u>Reynoso v. United States</u>, 537 F. Supp. 978 (N.D. Cal. 1982) (damages allegedly caused by the failure of the VA to grant hospital admission for further care held to satisfy jurisdictional prerequisites of Section 2675(a)).

Movant has, to the contrary, cited no authority, nor any undisputed factual basis, for dismissing Plaintiff's claims against the VA, and certainly no controlling authority entitling the VA to a grant of partial summary judgment on this flimsy a record.

The Government's second attempt to remove the VA and its questioned conduct from this action, it is once again respectfully submitted, should therefore be summarily <u>DENIED</u>.

DATED: Honolulu, Hawaii; April 24, 2006.

GARY VICTOR DUBIN
Attorney for Plaintiff