ORIGINAL

GARY VICTOR DUBIN 3181
Dubin Law Offices
55 Merchant Street, Suite 3100
Honolulu, Hawaii 96813
Telephone: (808) 537-2300
Facsimile: (808) 523-7733
E-Mail: gdubin@dubinlaw.net

Attorney for Plaintiff
Kevin Milnes

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 24 2006

at 11 o'clock and 13 min P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEVIN MILNES,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Defendant. | CIVIL NO. 02-00365 BMK<br><br>PLAINTIFF KEVIN MILNES' **SEPARATE AND CONCISE COUNTER-STATEMENT OF MATERIAL FACTS**; DECLARATION OF KEVIN MILNES; EXHIBITS 1 THROUGH 15; CERTIFICATE OF SERVICE<br><br>DATE:　　May 12, 2006<br>TIME:　　2:00 p.m.<br>JUDGE:　Barry M. Kurren<br><br>Trial Date: October 16, 2006 |

**PLAINTIFF KEVIN MILNES' SEPARATE
AND CONCISE COUNTER-STATEMENT OF MATERIAL FACTS**

COMES NOW Plaintiff KEVIN MILNES, by and through his attorney, Gary Victor Dubin, pursuant to Local Rule 56.1, and in response to "Defendant's Concise Statement Of Material Facts In Support Of Defendant's Motion To Dismiss Or In the Alternative, For Partial Summary Judgment Re: VA Claims," hereby submits his separate, concise counter-statement of material facts, as shown in chart form on the following pages.

DATED: Honolulu, Hawaii; April 24, 2006.

　　　　　　　　　　　　　　　　　GARY VICTOR DUBIN
　　　　　　　　　　　　　　　　　Attorney for Plaintiff

SCANNED    ORIGINAL

| PLAINTIFF'S RESPONSE TO DEFENDANT'S FACTS | DOCUMENTATION |
|---|---|
| 1. In a January 27, 1999 correspondence addressed to the Department of Veterans Affairs ("VA"), Plaintiff filed a claim for benefits pursuant to 38 USC § 1151 for Tripler's Medical Mistreatment or Medical Malpractice (partially disputed, as incomplete statement). | Milnes Declaration, Paragraphs 3 through 18, and Exhibits 2 through 8. |
| 2. On January 21, 2000, Plaintiff submitted a SF-95 form for damage injury to death to the Assistant Regional Counsel, Department of Veterans Affairs Pacific Island Health Care System, Miles T. Miyamoto ("Miyamoto"), which did not reference any negligent actions by the VA or any of its employees (completely disputed; was referenced therein). | Milnes Declaration, Paragraphs 5 through 18, and Exhibits 2 through 8. |
| 3. Miyamoto responded in a January 21, 2000 correspondence in which he informed Plaintiff that his failure to allege any negligence of a VA employee did not constitute a "presentation of a claim for damages or injuries to the VA." Miyamoto suggested that Plaintiff should consider whether "your claim should be submitted elsewhere." (admitted, although incomplete statement). | Milnes Declaration, Paragraph 8, and Exhibit 5. |
| 4. On January 26, 2000, the Department of the Army informed Miyamoto that they accepted Plaintiff's administrative claim (admitted). | Miyamoto Declaration, Paragraph 6, and Exhibits "D" |
| 5. The Department of the Army and the VA are separate and distinct federal entities (admitted; however does not mean that they cannot be joint and/or several tortfeasors). | Miyamoto Declaration, Paragraph 6. |
| 6. Plaintiff never received any notification from the VA that it accepted a tort claim filed by Plaintiff or that Plaintiff's claim was proper (admitted; one of Plaintiff's complaints). | Milnes Declaration, Paragraph 16. |
| 7. Plaintiff never submitted a proper claim for damage, injury, or death against the VA to Miyamoto's office which alleged that any VA employee provided negligent medical treatment to Plaintiff (disputed; additionally the absence of medical treatment in and of itself is sufficient to prove negligence without names). | Milnes Declaration, Paragraphs 4 through 13, and Exhibits 2 through 8, and 17. |
| PLAINTIFF'S COUNTER-STATEMENT OF FACTS | |
| 8. In June of 1999, Milnes became seriously ill, and was referred by the VA Clinic ("VA") in Honolulu to Tripler Army Medical Center ("Tripler") where Milnes eventually underwent surgery for the removal of what was subsequently told to him to have been a dead, gangrenous gall bladder. | Milnes Declaration, Paragraph 2. |

2

| | |
|---|---|
| 9. The focus of this lawsuit is the negligence of both Tripler and the VA before, during, and after the surgery, as specifically detailed Milnes' letter dated July 7, 1999, which Milnes sent to the Chief of Staff of the Department of Veteran Affairs' Regional Office in Honolulu, a true and correct copy of which is set forth in Exhibit 1 attached hereto. | Milnes Declaration, Paragraph 3. |
| 10. As a result, on July 19, 1999, Milnes filed written negligence claims against both Tripler and the VA, respectively; a true and correct copy of his written claim submitted by him to the VA on Standard Form 95 is set forth in Exhibit 2 attached hereto, addressed to the attention of Miles Miyamoto, VA Senior Attorney. | Milnes Declaration, Paragraph 4. |
| 11. The very next day Milnes wrote again to the Chief of Staff of the Department of Veteran Affairs' Regional Office in Honolulu, by letter dated July 20, 1999, supplementing his Standard Form 95 Claim against the VA, elaborating as to the deficient standard of care that he had and still was experiencing, a true and correct copy of which is set forth in Exhibit 3 attached hereto. | Milnes Declaration, Paragraph 5. |
| 12. Again on July 27, 1999, Milnes reiterated the information contained in his letters of July 7 and July 20, 1999, supra, by this time writing to the Department of Veterans Affairs' Medical Regional Office in Honolulu, to the attention of John Montgomery, a true and correct copy of which is set forth in Exhibit 4 attached hereto. | Milnes Declaration, Paragraph 6. |
| 13. During the last six months of 1999 Milnes continued to speak with and request assistance from claims representatives of both Tripler and the VA, who informed him that they were working together to evaluate my respective, related claims. | Milnes Declaration, Paragraph 7. |
| 14. By letter dated January 21, 2000, a true and correct copy of which is set forth in Exhibit 5 attached hereto, Mr. Miles Miyamoto for the first time mailed Milnes a new, blank two-page Standard Form 95, informing him that he did not deem his submission against the VA to be in proper form, contending that Milnes had not named the VA employee responsible for his injuries and that he did not include a sum certain in the initial submission for money damages. | Milnes Declaration, Paragraph 8. |
| 15. On January 24, 2000, Milnes therefore replied to Mr. Miyamoto, sending him his original Standard Form 95 with its Statement In Support Of Claim again attached thereto (Exhibit 2), together with his additional, requested Standard Form 95 again filled in, this time containing the amount of $2,000,000 as the amount of his claim, a true and correct copy of which is set forth in Exhibit 6 attached hereto. | Milnes Declaration, Paragraph 9. |

3

| | |
|---|---|
| 16. The reason why Milnes did not include the amount of his claim in his initial submission was that Milnes was seeking a physical examination to determine the extent of his injuries, for which reason he noted "C&P" in Box 12.b in his initial Standard Form 95, thereby requesting same be conducted first (Exhibit 2). | Milnes Declaration, Paragraph 10. |
| 17. Milnes faxed his January 24, 2000, submission directly to Mr. Miyamoto, and Milnes also faxed a copy to Tripler, he also mailed the original to Mr. Miyamoto, and he hand carried a copy that afternoon to Mr. Gary Vincent and Mr. Allen Kellogg, at the VA Administrative Office right next door to Tripler, located at the time on the ground floor, having just moved its office there, since Milnes had been speaking with both Mr. Miyamoto and with Ms. Laura L. Waterman, Medical Claims Attorney for Tripler in Honolulu, who had informed him that they were working together to evaluate his claim. | Milnes Declaration, Paragraph 11. |
| 18. After faxing Mr. Miyamoto his copy, Milnes immediately telephoned Mr. Miyamoto in order to be certain that he had received his fax; he told Milnes that he had not, so Milnes faxed it to him again, and he called me back to confirm that he did finally get Milnes' fax that day. | Milnes Declaration, Paragraph 12. |
| 19. Thereafter, Milnes heard nothing further from the VA regarding his negligence claim, so he continued to send the VA additional claim forms, for example, on June 25, 2001, specifically submitting further evidence of his injuries, a true and correct copy of which is set forth in Exhibit 7 attached hereto, on October 18, 2002, specifically complaining about not having been yet informed as to the status of his claim, a true and correct copy of which is set forth in Exhibit 8 attached hereto, and on November 7, 2002, specifically asking for help to mitigate the injuries, a true and correct copy of which is set forth in Exhibit 9 attached hereto.  Still no response came to Milnes from the VA. | Milnes Declaration, Paragraph 13. |
| 20. Milnes thereafter requested his medical records from Tripler and the VA, and as a part of that document production from Tripler he subsequently received a copy of his second, submitted "$2,000,000" Standard Form 95, supra, bearing a Tripler "received" stamp and the sending fax number known to him of Ms. Waterman, proving that it had been previously in fact sent by Milnes in response to Mr. Miyamoto's January 21, 2000, letter, supra, and faxed around the administrative system at least within Tripler, a true and correct copy of which is set forth in Exhibit 10 attached hereto. | Milnes Declaration, Paragraph 14. |
| 21. Milnes continued to press his claim against and to the VA; for example: on December 20, 2001, Milnes faxed the VA General Inspector in Washington, D.C., reiterating his | Milnes Declaration, Paragraph 15. |

4

| | |
|---|---|
| claim, a true and correct copy of which is set forth in Exhibit 11 attached hereto; on May 2, 2002, he similarly faxed VA Director David Burge, with copies to Gary Nakamura of the DAV, and to Congresswoman Patsy Mink, and to U.S. Senator Daniel Inouye, a true and correct copy of which is set forth in Exhibit 12 attached hereto; and eventually Representative Mink wrote on March 13, 2002, on his behalf to Mr. Burge, supra, pleading his case, a true and correct copy of which is set forth in Exhibit 13 attached hereto. | |
| 22. Not having received any response from the VA to his Standard Form 95 claim – to this day – and after complaining to just about everyone in the VA, locally and nationally, as well as to Hawaii Representatives and Senators alike, Milnes had no other choice or means of redress than to file this lawsuit, which -- without the means of paying an attorney at the time -- he prepared pro se and submitted to the Court on June 17, 2002, a true and correct copy of which Complaint is set forth in Exhibit 14 attached hereto, detailing in Paragraph 11 of his Complaint his negligence claims against the VA, whose refusal to assist him with other than substandard care further materially aggravated his injuries. | Milnes Declaration, Paragraph 16. |
| 23. It is not true that my claims are only against Tripler. My primary care was at the VA. I was referred to Tripler for surgery only, and all mistakes in my after-care, which aggravated my condition, such as the failure to provide needed, follow-up medication, home nursing care, and infection specialists were examples of the medical malpractice committed by the VA while I was on out-patient status. | Milnes Declaration, Paragraph 17. |
| 24. The difference between being denied "benefits" and being subjected to "medical malpractice" by the VA was the fact that I was already a patient of the VA, eligible and receiving benefits for my condition, having been referred to Tripler for surgery only, while ill and still in the medical care of the VA. | Milnes Declaration, Paragraph 18. |

5