IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEVIN MILNES, | ) CIVIL NO. 02-00365 BMK |
| Plaintiff, | ) DECLARATION OF KEVIN MILNES |
| vs. | ) |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

### DECLARATION OF KEVIN MILNES

I, KEVIN MILNES, DECLARE:

1. I am the Plaintiff in this action, and I make the within statements based upon my own personal firsthand knowledge.

2. In June of 1999, I began seriously ill, and was referred by the VA Clinic ("VA") in Honolulu to Tripler Army Medical Center ("Tripler") where I eventually underwent surgery for the removal of what was subsequently told to me to have been a dead, gangrenous gall bladder.

3. The focus of this lawsuit is the negligence of both Tripler and the VA before, during, and after the surgery, as specifically detailed my letter dated July 7, 1999, which I sent to the Chief of Staff of the Department of Veteran Affairs' Regional Office in Honolulu, a true and correct copy of which is set forth in Exhibit 1 attached hereto.

4. As a result, on July 19, 1999, I filed written negligence claims against both Tripler and the VA, respectively; a true and correct copy of my written claim submitted by me to the VA on Standard Form 95 is set forth in Exhibit 2 attached hereto, addressed to the attention of Miles Miyamoto, VA Senior Attorney.

5. The very next day I wrote again to the Chief of Staff of the Department of Veteran Affairs' Regional Office in Honolulu, by letter dated July 20, 1999, supplementing my Standard Form 95 Claim against the VA, elaborating as to the deficient standard of care that I had and still was experiencing, a true and correct copy of which is set forth in Exhibit 3 attached hereto.

6. Again on July 27, 1999, I reiterated the information contained in my letters of July 7 and July 20, 1999, *supra*, by this time writing to the Department of Veterans Affairs' Medical Regional Office in Honolulu, to the attention of John Montgomery, a true and correct copy of which is set forth in Exhibit 4 attached hereto.

7. During the last six months of 1999 I continued to speak with and request assistance from claims representatives of both Tripler and the VA, who informed me that they were working together to evaluate my respective, related claims.

8. By letter dated January 21, 2000, a true and correct copy of which is set forth in Exhibit 5 attached hereto, Mr. Miles Miyamoto for the first time mailed me a new, blank two-page Standard Form 95, informing me that he did not deem my submission against the VA to be in proper form, contending that I had not named the VA employee responsible for my injuries and that I did not include a sum certain in the initial submission for money damages.

9. On January 24, 2000, I therefore replied to Mr. Miyamoto, sending him my original Standard Form 95 with its Statement In Support Of Claim again attached thereto (Exhibit 2), together with his additional, requested Standard Form 95 again filled in, this time containing the amount of $2,000,000 as the amount of my claim, a true and correct copy of which is set forth in Exhibit 6 attached hereto.

10. The reason why I did not include the amount of my claim in my initial submission was that I was seeking a physical examination to determine the extent of

my injuries, for which reason I noted "C&P" in Box 12.b in my initial Standard Form 95, thereby requesting same be conducted first (Exhibit 2).

11. I faxed my January 24, 2000, submission directly to Mr. Miyamoto, and I also faxed a copy to Tripler, I also mailed the original to Mr. Miyamoto, and I hand carried a copy that afternoon to Mr. Gary Vincent at the VA Administrative Office right next door to Tripler, located at the time on the ground floor, having just moved its office there, since I had been speaking with both Mr. Miyamoto and with Ms. Laura L. Waterman, Medical Claims Attorney for Tripler in Honolulu, who had informed me that they were working together to evaluate my claim.

12. After faxing Mr. Miyamoto his copy, I immediately telephoned Mr. Miyamoto in order to be certain that he had received my fax; he told me that he had not, so I faxed it to him again, and he called me back to confirm that he did finally get my fax that day.

13. Thereafter, I heard nothing further from the VA regarding my negligence claim, so I continued to send the VA additional claim forms, for example, on June 25, 2001, specifically submitting further evidence of my injuries, a true and correct copy of which is set forth in Exhibit 7 attached hereto, on October 18, 2002, specifically complaining about not having been yet informed as to the status of my claim, a true and correct copy of which is set forth in Exhibit 8 attached hereto, and on November 7, 2002, specifically asking for help to mitigate the injuries, a true and correct copy of which is set forth in Exhibit 9 attached hereto.  Still no response from the VA.

14. I thereafter requested my medical records from Tripler and the VA, and as a part of that document production from Tripler I subsequently received a copy of my second, submitted "$2,000,000" Standard Form 95, *supra*, bearing a Tripler "received" stamp and the sending fax number known to me of Ms. Waterman, proving that it had been previously in fact sent by me in response to Mr. Miyamoto's January 21, 2000,

3

letter, *supra*, and faxed around the administrative system at least within Tripler, a true and correct copy of which is set forth in Exhibit 10 attached hereto.

15. I continued to press my claim against and to the VA; for example: on December 20, 2001, I faxed the VA General Inspector in Washington, D.C., reiterating my claim, a true and correct copy of which is set forth in Exhibit 11 attached hereto; on May 2, 2002, I similarly faxed VA Director David Burge, with copies to Gary Nakamura of the DAV, and to Congresswoman Patsy Mink, and to U.S. Senator Daniel Inouye, a true and correct copy of which is set forth in Exhibit 12 attached hereto; and eventually Representative Mink wrote on March 13, 2002, on my behalf to Mr. Burge, *supra*, pleading my case, a true and correct copy of which is set forth in Exhibit 13 attached hereto.

16. Not having received any response from the VA to my Standard Form 95 claim -- to this day -- and after complaining to just about everyone in the VA, locally and nationally, as well as to Hawaii Representatives and Senators alike, I had no other choice or means of redress than to file this lawsuit, which -- without the means of paying an attorney at the time -- I prepared *pro se* and submitted to the Court on June 17, 2002, a true and correct copy of which Complaint is set forth in Exhibit 14 attached hereto, detailing in Paragraph 11 of my Complaint my negligence claims against the VA, whose refusal to assist me with other than substandard care further materially aggravated my injuries, as shown in the photographs set forth in Exhibit 15.

17. It is not true that my claims are only against Tripler.  My primary care was at the VA.  I was referred to Tripler for surgery only, and all mistakes in my after-care, which aggravated my condition, such as the failure to provide needed, follow-up medication, home nursing care, and infection specialists were examples of the medical malpractice committed by the VA while I was on out-patient status.

4

18. The difference between being denied "benefits" and being subjected to "medical malpractice" by the VA was the fact that I was already a patient of the VA, eligible and receiving benefits for my condition, having been referred to Tripler for surgery only, while ill and still in the medical care of the VA.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED AT HONOLULU, HAWAII, ON APRIL 24, 2006.

_____
KEVIN MILNES