GARY VICTOR DUBIN 3181
Dubin Law Offices
55 Merchant Street, Suite 3100
Honolulu, Hawaii 96813
Telephone: (808) 537-2300
Facsimile: (808) 523-7733
E-Mail: gdubin@dubinlaw.net

Attorney for Plaintiff
Kevin Milnes

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 13 2006

at _11_ o'clock and _2_ min. _P_M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEVIN MILNES,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | CIVIL NO. 02-00365 BMK<br><br>PLAINTIFF KEVIN MILNES'<br>**MEMORANDUM IN OPPOSITION** TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: VA CLAIMS, FILED MAY 12, 2006; CERTIFICATE OF SERVICE<br><br>(The Honorable Barry M. Kurren)<br><br>Trial Date: October 16, 2006 |

**PLAINTIFF KEVIN MILNES' MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: VA CLAIMS, FILED MAY 12, 2006**

## A. Introduction

1. This Memorandum In Opposition responds to the third in a series of almost identical motions filed by the Government this past year seeking to have Plaintiff's claims against the Department of Veteran's Affairs ("VA") removed from this case, leaving only Plaintiff's claims against Tripler Army Medical Center ("Tripler").

2. The Government's first such motion, after being fully briefed, was withdrawn; its second such motion was heard on May 12, 2006, before the Honorable Barry M. Kurren, and taken under advisement. This companion, third motion, by agreement of

ORIGINAL

the parties, has now been briefed as a nonhearing motion, to be decided at the same time as the Government's second motion.

3. The sole basis for the Government's third motion is that, alternatively, the VA claims should be dropped from the lawsuit because the Plaintiff has produced no expert medical report with respect to his claims against the VA.[1]  Plaintiff disagrees.

### B. Expert Medical Testimony Is Not Necessarily Required

4. While Plaintiff concedes that as a general rule expert testimony is required in medical malpractice actions in Hawaii, whose state law applies in this action in this Court, Hawaii case law as in all other jurisdictions researched in the United States recognizes what is universally called the "common knowledge" exception in "situations wherein a lay person is capable of supplanting the applicable standard of care from his or her 'common knowledge' or ordinary experience," Craft v. Pebbles, 78 Haw. 287, 298, 893 P.2d 138 (1995), and here the trier of fact will be a Magistrate Judge, thereby significantly reducing the possibility of any prejudicial error.[2]

5. Thus, the Government has misidentified the threshold issue in its third such motion, which is not whether or not the Plaintiff has disclosed a medical expert to testify with respect to his claims against the VA,[3] but whether such an expert is actually

---

[1] The Plaintiff has retained needed expert medical testimony with regard to his claims against Tripler, which are not at issue in these proceedings.

[2] Other jurisdictions have identified that exception in similar terms; e.g.: Jackson v. Mountain Sanitarium, 234 N.C. 222, 227, 67 S.E.2d 57 (1951) ("where non-expert jurors of ordinary intelligence may draw their own inferences from the facts and circumstances shown in evidence").

[3] The Government's entire mini-concise statement of material facts, for instance, merely recites that no such expert testimony has been disclosed by the Plaintiff; since the Plaintiff has already set forth his concise counterstatement of material facts in response to the Government's second motion, and since

2

needed – and the answer to that question depends on the particular facts asserted against the VA by the Plaintiff, which the Government in its third motion has chosen mistakenly to simply ignore.[4]

### C. Plaintiff's Claims Against The VA Are For Neglect And Indifference

6. A fair and complete reading of the Complaint, drafted by the Plaintiff *pro se*, as well as the Plaintiff's voluminous contemporary correspondence already presented in opposition to the Government's second such motion, reveals that – contrary to the Government's incessant allegations that the Plaintiff's only complaint against the VA has been for a denial of benefits, the Plaintiff to the contrary is charging both Tripler and the VA with joint medical malfeasance, having failed jointly to properly treat his condition, as succinctly explained in Plaintiff's opposing Declaration, already presented in response to the Government's second such motion now taken under advisement:

> *17. It is not true that my claims are only against Tripler. My primary care was at the VA. I was referred to Tripler for surgery only, and all mistakes in my after-care, which aggravated my condition, such as the failure to provide needed, follow-up medication, home nursing care, and infection specialists were examples of the medical malpractice committed by the VA while I was on out-patient status.*

---

both the second and this third motion are being taken under advisement to be decided together, the Plaintiff elects to rest upon his already filed complete counterstatement of material facts which also covers the situation in these proceedings as well, incorporated herein by this reference in the interest of saving space and expense.

[4] It would be highly improper as well as unfair for the Government to address that actual factual issue only in its reply papers, thus ambushing the Plaintiff, as it were, by not affording the Plaintiff a chance to respond, in violation of Rule 56(a) of the Federal Rules of Civil Procedure which requires that the basis for a summary judgment motion be presented in the motion papers and not in reply.

> *18. The difference between being denied "benefits" and being subjected to "medical malpractice" by the VA was the fact that I was already a patient of the VA, eligible and receiving benefits for my condition, having been referred to Tripler for surgery only, while ill and still in the medical care of the VA.*

7. And further, contrary to the Government's attempt to isolate the Plaintiff's claim as only against Tripler, the Plaintiff in his prior Declaration, with appropriate documentation (the citations below are to his Exhibits already on file accompanying his Declaration now before this Court), fully substantiated that his complaints were continually directed also at the VA for its medical malpractice as his primary care provider as a result of its essentially denying him any follow-up care whatsoever, such as a referral to an infection specialist, although requested numerous times:

> *4. As a result, on July 19, 1999, I filed written negligence claims against both Tripler and the VA, respectively; a true and correct copy of my written claim submitted by me to the VA on Standard Form 95 is set forth in Exhibit 2 attached hereto, addressed to the attention of Miles Miyamoto, VA Senior Attorney.*
>
> *5. The very next day I wrote again to the Chief of Staff of the Department of Veteran Affairs' Regional Office in Honolulu, by letter dated July 20, 1999, supplementing my Standard Form 95 Claim against the VA, elaborating as to the deficient standard of care that I had and still was experiencing, a true and correct copy of which is set forth in Exhibit 3 attached hereto.*
>
> *6. Again on July 27, 1999, I reiterated the information contained in my letters of July 7 and July 20, 1999, supra, by this time writing to the Department of Veterans Affairs' Medical Regional Office in Honolulu, to the attention of John Montgomery, a true and correct copy of which is set forth in Exhibit 4 attached hereto.*
>
> *7. During the last six months of 1999 I continued to speak with and request assistance from claims representatives of both Tripler and the VA, who informed me that they were working together to evaluate my respective, related claims.*
>
> *8. By letter dated January 21, 2000, a true and correct copy of which is set forth in Exhibit 5 attached hereto, Mr. Miles Miyamoto for the first time mailed me a new, blank two-page Standard Form 95, informing me that he did not deem my submission against the VA to*

*be in proper form, contending that I had not named the VA employee responsible for my injuries and that I did not include a sum certain in the initial submission for money damages.*

*9. On January 24, 2000, I therefore replied to Mr. Miyamoto, sending him my original Standard Form 95 with its Statement In Support Of Claim again attached thereto (Exhibit 2), together with his additional, requested Standard Form 95 again filled in, this time containing the amount of $2,000,000 as the amount of my claim, a true and correct copy of which is set forth in Exhibit 6 attached hereto.*

*10. The reason why I did not include the amount of my claim in my initial submission was that I was seeking a physical examination to determine the extent of my injuries, for which reason I noted "C&P" in Box 12.b in my initial Standard Form 95, thereby requesting same be conducted first (Exhibit 2).*

*11. I faxed my January 24, 2000, submission directly to Mr. Miyamoto, and I also faxed a copy to Tripler, I also mailed the original to Mr. Miyamoto, and I hand carried a copy that afternoon to Mr. Gary Vincent at the VA Administrative Office right next door to Tripler, located at the time on the ground floor, having just moved its office there, since I had been speaking with both Mr. Miyamoto and with Ms. Laura L. Waterman, Medical Claims Attorney for Tripler in Honolulu, who had informed me that they were working together to evaluate my claim.*

*12. After faxing Mr. Miyamoto his copy, I immediately telephoned Mr. Miyamoto in order to be certain that he had received my fax; he told me that he had not, so I faxed it to him again, and he called me back to confirm that he did finally get my fax that day.*

*13. Thereafter, I heard nothing further from the VA regarding my negligence claim, so I continued to send the VA additional claim forms, for example, on June 25, 2001, specifically submitting further evidence of my injuries, a true and correct copy of which is set forth in Exhibit 7 attached hereto, on October 18, 2002, specifically complaining about not having been yet informed as to the status of my claim, a true and correct copy of which is set forth in Exhibit 8 attached hereto, and on November 7, 2002, specifically asking for help to mitigate the injuries, a true and correct copy of which is set forth in Exhibit 9 attached hereto. Still no response from the VA.*

*14. I thereafter requested my medical records from Tripler and the VA, and as a part of that document production from Tripler I subsequently received a copy of my second, submitted "$2,000,000" Standard Form 95, supra, bearing a Tripler "received" stamp and the*

*sending fax number known to me of Ms. Waterman, proving that it had been previously in fact sent by me in response to Mr. Miyamoto's January 21, 2000, letter, supra, and faxed around the administrative system at least within Tripler, a true and correct copy of which is set forth in Exhibit 10 attached hereto.*

*15. I continued to press my claim against and to the VA; for example: on December 20, 2001, I faxed the VA General Inspector in Washington, D.C., reiterating my claim, a true and correct copy of which is set forth in Exhibit 11 attached hereto; on May 2, 2002, I similarly faxed VA Director David Burge, with copies to Gary Nakamura of the DAV, and to Congresswoman Patsy Mink, and to U.S. Senator Daniel Inouye, a true and correct copy of which is set forth in Exhibit 12 attached hereto; and eventually Representative Mink wrote on March 13, 2002, on my behalf to Mr. Burge, supra, pleading my case, a true and correct copy of which is set forth in Exhibit 13 attached hereto.*

### D. Expert Testimony Is Not Required To Prove Such Neglect And Indifference

8. The Government has cited no authority whatsoever in Hawaii, in the Ninth Circuit, or elsewhere, even attempting to satisfy its evidentiary burden of proof to show that the Plaintiff is not entitled to the "common knowledge" exception found in Hawaii law as recognized in Craft, *supra*.

9. To the contrary, the case law fully supports the Plaintiff's position that, with respect to the VA malpractice claims only, no expert medical testimony will be needed at trial.

10. For example, a surprisingly similar situation as here was recently before the Court of Appeals for the Seventh Circuit in Gil v. Reed, 381 F.3d 649 (7th Cir. 2004), wherein the same issue, *inter alia*, arose with regard to whether expert medical testimony was needed by the plaintiff there, who had a similar malady as did the Plaintiff here, a rectal prolapse, which resulted in somewhat identical major surgery, and after-surgery complaints about infection, lingering pain, and constipation, and before and after surgery delayed antibiotics, who sued the Government for medical malpractice violations pursuant to the Federal Tort Claims Act ("FTCA").

11. In Gil, the Court of Appeals for the Seventh Circuit, first recognizing that it would construe Gil's pleadings liberally, 381 F.3d at 21, as they were drafted, as here, *pro se*, found Gil's proposal to use his own testimony and the testimony of the Government's treating physicians at trial in place of his own medical experts, to prove his medical malpractice case, not only judicially acceptable, 381 F.3d at 660-661, but falling within the "common knowledge" exception to the general rule ("no doubt any physician would testify that delaying antibiotics for a serious infection for no reason other than spite does not meet the standard of care for a physician's assistant. Summary judgment was not warranted because Gil may be able to show just that").

12. Thus, in Gil, as here, what was to be proven were the omissions of the Government physicians altogether in that case to provide medical care – the exact complaint, before and during this lawsuit, that the Plaintiff here has been steadfastly asserting against his VA after-surgery medical providers with whom he has had many angry words in the past and to this day, their refusing to provide him angrily, for instance, with a referral to an infection specialist for several years.

13. Another analogous situation also came before the Court of Appeals for the Seventh Circuit in Ledford v. Sullivan, 105 F.3d 354 (7th Cir. 1997), wherein a federal prisoner, claiming that in denying him undisputed, needed medication, which resulted in serious medical needs, Government officials were liable for his resultant "nausea, vomiting, dizziness, a 'crawling of the skin' sensation, unspecified emotional and mental regression, and depreciation," 105 F.3d at 356, caused by their "deliberate indifference," 105 F.3d at 359, not too dissimilar from the conditions which the Plaintiff here experienced and continues to experience, arguably traceable to the VA's similar "deliberate indifference" to his past and present medical primary-care, after-surgery needs.

14. In <u>Ledford</u>, the Court of Appeals for the Seventh Circuit concluded that Ledford was not in need of expert medical testimony to prove his case, holding, 105 F.3d at 359, that "determining deliberate indifference was not so complicated that an expert was required to establish Ledford's case . . . , [that] deliberate indifference toward Ledford's serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment. The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care."

15. Thus, in accusing the VA of deliberate indifference, the Plaintiff here similarly should, as in <u>Ledford</u>, arguably not be burdened with the unnecessary evidentiary requirement of expert medical testimony to prove the VA's deliberate indifference to him, when in fact such complete failure on the part of his primary care provider to act reasonably represents something more akin to common law negligence than it does to medical malpractice -- except for the fact that, unlike in <u>Ledford</u> in which seven prison officials were the named defendants, the villains here, which makes this situation even worse, happen to have medical degrees.

### E. The Claims Against the VA Are Indispensable To This Case

16. In its now record-setting, three-fold zeal to have the claims against the VA dropped from this action, the Government has adroitly forgotten that both the VA and Tripler were jointly the Plaintiff's health care providers at one and the same time that the alleged medical malpractice took place over several years -- the VA his primary care provider and Tripler his secondary surgical provider – which means that in the course of trial it may be alleged and/or determined that one or the other was completely at fault or that both were partially at fault in varying degrees.

17. Were the claims against the VA thus to be dismissed before trial, the Plaintiff would be at a considerable disadvantage, as the Government might then attempt to

prove that the VA, against whom no medical malpractice claims would then be pending, was after all, as the Plaintiff's primary care provider, partially if not totally the blame for the Plaintiff's condition.

### F. Conclusion

18. For each and all of the above reasons, it is respectfully submitted that Plaintiff's claims against the VA for willful and neglectful omissions and for its deliberate indifference toward him and his medical condition in all fairness should and must remain in this action.

DATED: Honolulu, Hawaii; June 13, 2006.

_____
GARY VICTOR DUBIN
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KEVIN MILNES, | ) | CIVIL NO. 02-00365 BMK |
| Plaintiff, | ) ) ) | CERTIFICATE OF SERVICE |
| vs. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date first written below I duly served the foregoing document upon the following person by U.S. Mail, addressed as follows:

>Edric M. Ching, Esq.
>Assistant U.S. Attorney
>Room 6-100, Federal Bldg.
>300 Ala Moana Blvd.
>Honolulu, Hawaii 96850
>
>*Attorney for Defendants*

DATED: Honolulu, Hawaii; June 13, 2006.

GARY VICTOR DUBIN
Attorney for Plaintiff