# Exhibit "A"

Case 1:02-cv-00365-BMK     Document 91-3     Filed 07/05/2006     Page 1 of 12

EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

EDRIC M. CHING       #6697
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
E-mail: edric.ching@usdoj.gov

Attorneys for Defendant
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEVIN MILNES,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | CIVIL NO. 02-00365 BMK<br><br>DEFENDANT'S FIRST REQUEST FOR ADMISSIONS TO PLAINTIFF |

DEFENDANT'S FIRST REQUEST FOR ADMISSIONS TO PLAINTIFF

TO:  GARY VICTOR DUBIN, ESQ.
     Dubin Law Offices
     55 Merchant Street, Suite 3100
     Honolulu, Hawaii 96813

     Attorney for Plaintiff
     KEVIN MILNES

PLEASE TAKE NOTICE, that pursuant to Rule 36 of the Federal Rules of Civil Procedure (FRCP), Defendant United States of America hereby requests Plaintiff KEVIN MILNES ("Plaintiff")

EXHIBIT "A"

to admit the truth of the statments attached, under oath. Plaintiff is required to respond within thirty (30) days from the date of service, by serving responses to the requests upon Edric Ching, Assistant U.S. Attorney, PJKK Federal Building, Room 6-100, Honolulu, Hawaii 96850. Failure to do so, pursuant to Rule 36, will constitute an admission.

## INSTRUCTIONS/DEFINITIONS

These responses are continuing in nature so as to require prompt supplementation or modification of responses to the full extent specified in Rule 26(e) of the FRCP. Any additional information relating in any way to these responses which Plaintiff acquires subsequent to the date of responding to the requests shall be furnished to the Defendant promptly after such information is acquired. These supplemental responses must be served on the Defendant within fifteen (15) days after receipt of such information. These requests seek to inquire as to all information presently in the possession, custody, control, or knowledge of the Plaintiff including information contained in or on any documents (as defined below) or any other things known or available to the Plaintiff, including any and all information in the possession of Plaintiff's attorneys, investigators, agents, employees or any other person acting with or on behalf of Plaintiff.

If Plaintiff lacks the information necessary to respond to the requests, please describe the specific efforts made by the Plaintiff or anyone on his behalf to ascertain the information and state as definitely as possible when the Plaintiff anticipates obtaining the information requested and will Supplement his response. As used in these requests, "you" AND "Plaintiff" refers to the named Plaintiff, KEVIN MILNES. All responses to these requests shall be deemed to reflect the knowledge of Plaintiff, his agents and attorneys, if any.

As used herein, the term "document" means any written, printed, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any type or nature however produced or reproduced, whether sent or received, including, but not limited to, all records, memoranda, reports, financial statements, business records, handwritten and other notes, transcripts, papers, letters, envelopes, faxes, telegrams, cables, telex messages, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, diaries, lists, log books, comparisons, surveys, charts, graphs, books, pamphlets, articles, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, regulations, minutes, or transcriptions of notations, meetings or telephone conversations or other communications of any type, photographs, microfilms, tapes,

discs, data cells, drums, computer programs and printouts, video-recordings or other data compilations from which information can be obtained, and any other document as defined in Rule 26 of the FRCP which are in your custody or to which you otherwise have access.

As to any aspect of these requests to which you assert an objection, FRCP 36(a) states that the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the Plaintiff cannot truthfully admit or deny the matter.

Further, a denial shall fairly meet the substance of the requested admission, and when good faith requires the Plaintiff to qualify an answer or deny only a part of the matter of which an admission is requested, the Plaintiff shall specify so much of it as is true and qualify or deny the remainder.

In addition, the Plaintiff may not give lack of information or knowledge as a reason for failure to admit or deny unless the Plaintiff states that he has made a reasonable inquiry and that the information known or readily obtainable by the Plaintiff is insufficient to enable the Plaintiff to admit or deny. Also, the Plaintiff cannot refuse to answer or object to a request solely on the grounds that an admission requested presents a genuine issue for trial.

DATED: **May 31**            , 2006, at Honolulu, Hawaii

        EDWARD H. KUBO, JR.
        United States Attorney
        District of Hawaii

By _[signature]_
    EDRIC M. CHING
    Assistant U.S. Attorney

Attorneys for Defendant

ADMISSIONS REQUEST

ADMISSION NO. 1:   Admit that Plaintiff arrived at the Veterans Administration Medical Clinic on June 14, 1999, at approximately 11:55 a.m. to 12:05 p.m.

    ADMIT: _____           DENY: _____

ADMISSION NO. 2:   Admit that Plaintiff was subsequently transferred to the Tripler Army Medical Center ("TAMC") emergency department on June 14, 1999.

    ADMIT: _____           DENY: _____

ADMISSION NO. 3:   Admit that during the late evening of June 14, 1999 or early morning of June 15, 1999, Plaintiff was transferred to the TAMC surgical ward.

    ADMIT: _____           DENY: _____

ADMISSION NO. 4:   Admit that during the mid-morning of June 15, 1999, Plaintiff was administered Zosyn, a broad-based antibiotic.

    ADMIT: _____           DENY: _____

ADMISSION NO. 5:   Admit that at approximately 1:20 p.m. on June 15, 1999, a cholecystectomy procedure was performed on Plaintiff.

    ADMIT: _____           DENY: _____

ADMISSION NO. 6:   Admit that following the June 15, 1999 cholecystectomy procedure, Zosyn was administered to Plaintiff.

    ADMIT: _____           DENY: _____

ADMISSION NO. 7:   Admit that Plaintiff was discharged from the TAMC on June 19, 1999.

    ADMIT: _____        DENY: _____

ADMISSION NO. 8:   Admit that during Plaintiff's stay at the TAMC from June 14, 1999 to June 19, 1999 ("First Hospitalization"), Plaintiff was warned to stop smoking cigarettes.

    ADMIT: _____        DENY: _____

ADMISSION NO. 9:   Admit that during the First Hospitalization, Plaintiff continued to smoke cigarettes.

    ADMIT: _____        DENY: _____

ADMISSION NO. 10:   Admit that during the month prior to the First Hospitalization, Plaintiff smoked cigarettes on a consistent basis.

    ADMIT: _____        DENY: _____

ADMISSION NO. 11:   Admit that on June 24, 1999, Plaintiff entered the TAMC emergency department and was informed to check himself into the TAMC surgical ward the following day after Bradley Sakaguchi, M.D., cleaned and packed his wound.

    ADMIT: _____        DENY: _____

ADMISSION NO. 12:   Admit that on June 25, 1999, Plaintiff entered the TAMC surgical ward and was discharged on July 2, 1999 ("Second Hospitalization").

    ADMIT: _____        DENY: _____

7

ADMISSION NO. 13:   Admit that during the period between the First Hospitalization and Second Hospitalization, Plaintiff smoked cigarettes.

      ADMIT: _____           DENY: _____

ADMISSION NO. 14:   Admit that during the Second Hospitalization, Plaintiff smoked cigarettes.

      ADMIT: _____           DENY: _____

ADMISSION NO. 15:   Admit that Plaintiff only applied Dakin's Solution to his wound from the June 15, 1999 cholecystectomy procedure from July 1, 1999 to July 6, 1999.

      ADMIT: _____           DENY: _____

ADMISSION NO. 16:   Admit that Plaintiff did not use the Dakin's Solution on his wound from the June 15, 1999 cholecystectomy procedure following his meeting with Dr. Cirangle on July 6, 1999.

      ADMIT: _____           DENY: _____

ADMISSION NO. 17:   Admit that during the Second Hospitalization, Plaintiff left the TAMC facility against the advice of TAMC personnel.

      ADMIT: _____           DENY: _____

ADMISSION NO. 18:   Admit that after leaving the TAMC facility during the Second Hospitalization, Plaintiff returned a rented moving truck and carried objects weighing approximately sixty pounds.

      ADMIT: _____           DENY: _____

ADMISSION NO. 19:   Admit that on July 6, 1999, Plaintiff was admitted into TAMC and he was discharged on July 20, 1999 ("Third Hospitalization").

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

ADMISSION NO. 20:   Admit that during the Third Hospitalization, Plaintiff continued to smoke cigarettes.

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

ADMISSION NO. 21:   Admit that during the Third Hospitalization, Plaintiff was connected to a Vacuum-Assisted Wound Closure ("VAC") device.

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

ADMISSION NO. 22:   Admit that during the Third Hospitalization, Plaintiff was ordered to remain connected to the VAC.

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

ADMISSION NO. 23:   Admit that during the Third Hospitalization, Plaintiff removed himself from the VAC without the consent of TAMC personnel.

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

ADMISSION NO. 24:   Admit that the standard of care in Hawaii for the timing of cholecystectomy procedures is to perform the procedure within seventy-two hours of a patient's admission into a health care facility.

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

9

ADMISSION NO. 25:   Admit that treating a wound dehiscense without evisceration or infection by the application of dressings, suturing it at a later date (secondary closure) or allowing it to close on its own (secondary intention) in an outpatient setting is within the standard of care in Hawaii.

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

ADMISSION NO. 26:   Admit that the Dakin's Solution applied by Plaintiff to his wound did not delay the healing of his wound.

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

ADMISSION NO. 27:   Admit that the antibiotic therapy provided to Plaintiff prior to and following the June 15, 1999 cholecystectomy procedure was within the standard of care in Hawaii.

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

ADMISSION NO. 28:   Admit that the timing of the June 15, 1999 cholecystectomy procedure on Plaintiff was within the standard of care in Hawaii.

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

ADMISSION NO. 29:   Admit that Plaintiff's smoking cigarettes delayed the healing of Plaintiff's wound from the June 15, 1999 cholecystectomy procedure.

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

ADMISSION NO. 30:   Admit that Plaintiff's body weight delayed the healing of Plaintiff's wound from the June 15, 1999 cholecystectomy procedure.

    ADMIT: \_\_\_\_\_        DENY: \_\_\_\_\_

ADMISSION NO. 31:   Admit that Dr. Sakaguchi's decision to treat Plaintiff as an outpatient on June 24, 1999 was within the standard of care in Hawaii.

    ADMIT: _____          DENY: _____