GARY VICTOR DUBIN 3181
Dubin Law Offices
55 Merchant Street, Suite 3100
Honolulu, Hawaii 96813
Telephone: (808) 537-2300
Facsimile: (808) 523-7733
E-Mail: gdubin@dubinlaw.net

Attorney for Plaintiff
Kevin Milnes

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEVIN MILNES,<br><br>              Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>              Defendant. | CIVIL NO. 02-00365 BMK<br><br>PLAINTIFF KEVIN MILNES'<br>**MEMORANDUM IN OPPOSITION** TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; CERTIFICATE OF SERVICE<br><br>DATE:    April 27, 2007<br>TIME:    2:00 p.m.<br>JUDGE:  Barry M. Kurren<br><br>Trial Date: September 24, 2007 |

**PLAINTIFF KEVIN MILNES' MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

### A. Introduction

1. Plaintiff is suing the Government for medical malpractice, resulting from various deviations from the standard of care that he was entitled to expect when he first was admitted to Tripler Army Medical Center ("Tripler") on June 14, 1999, and thereafter throughout his post-operative years during which time his condition first worsened and then failed to improve, which still is debilitating to this day.

2. In support of his medical malpractice claims, the Plaintiff has submitted an expert report prepared by a prominent local surgeon, Dr. Peter Halford, practicing

medicine in the area of medical expertise directly associated with Plaintiff's medical malpractice claims, who after studying the medical records has concluded that Tripler violated its standard of care in at least six distinct ways (see Exhibit 7 attached to Plaintiff's Separate and Concise Counter-Statement of Material Facts):

> a. He found no documentation in the Tripler records he had at the time showing that the antibiotic Zosyn, ordered, had actually been administered before the surgical procedure the following day, which if true was "a breach of the standard" of care;
>
> b. He concluded that if Tripler's medical records had been altered to make it appear that the surgery had actually taken place on June 15, 1999, when in fact the surgery took place on June 16, 2007, that would represent "an egregious breach of medical care standards;"
>
> c. He determined that in the absence of any culture reports found in Tripler's records attempting to identify "what bacteria one is attempting to eliminate to be certain your selection [of an certain antibiotic] is correct," that would represent a violation of the "standard of care," as Zosyn, for instance, which Tripler claims to have administered to the Plaintiff, is a "penicillin antibiotic" useful in combating however only certain types of infections;
>
> d. He reported that according to a June 24, 1999, Emergency Room report, since Plaintiff's "wound was largely dehisced," the Plaintiff should have been admitted on June 24, 1999, to the hospital, and not the next day, "especially with a dehiscence of this degree," and that the delay, promoting "increased bacteria colonization" and "increased risk of evisceration," was a standard of care violation;
>
> e. He identified as a "definite negligent action" the ordering of Dakin's solution for treating Plaintiff's wound, knowing that the Plaintiff was "allergic to bleach," which was well documented in Tripler's patient records, which resulted "in an intense reaction," further delaying Plaintiff's "wound healing let alone the side effects" that the Plaintiff had likely to put up with; and
>
> f. He explained that if Tripler placed "entries in the medical record" attempting "to shift blame" to the patient "for all of his complications," that would be "a breach of medical ethics and care standards," concluding, for instance, that "it is hard for me to believe that someone could lift anything over 25 lbs in the first two weeks after a major abdominal incision."

### B. The Government's Counter-Contentions

3. The Government, in direct response to Dr. Halford's expert report, presents the declaration testimony of five medical providers:

    a. A licensed practical nurse (Ms. Sanchez-Martinez), who claims to have "hung a bag of Zosyn, connected it to the intravenous line leading into Milnes' body and began the flow of Zosyn into Milnes' existing intravenous line" at "9:20 a.m. on June 15, 1999;"

    b. Plaintiff's treating physician and primary surgeon (Paul Cirangle, M.D.), who claims to have "ordered the antibiotic Zosyn" for the Plaintiff the morning of June 15, 1999, and to have begun the surgery at 1:20 p.m. on June 15, 1999, who blames the Plaintiff for not following his post-operative instructions;

    c. A retired physician serving as a consultant in infectious diseases at Kaiser Moanalua Medical Center (Lawrence Eron, M.D.), who claims to have studied Tripler's patient records, noting that the Plaintiff was administered Zosyn at 9:20 a.m. on June 15, 1999, when the surgery occurred and every six hours after the surgery until June 18, 1999, finding nothing wrong with the Plaintiff's medical treatment at Tripler, nor that the Dakin's solution given the Plaintiff, despite his allergy to bleach, could have "delayed wound healing;"

    d. A Tripler emergency room physician who attended to the Plaintiff (Bradley Sakaguchi, M.D.), who claims that on June 24, 1999, he "did not notice esvisceration, or organs protruding through the skin," as the Plaintiff claims; and

    e. A Honolulu general surgeon (Whitney Limm, M.D.), who claims to have studied Tripler's patient records, noting that he Plaintiff "was given a broad spectrum intravenous antibiotic, Zosyn, and an operative procedure began in the early afternoon of June 15, 1999," finding nothing wrong, blaming the Plaintiff, according to hospital records, for not following post-operative instructions.

### C. The Plaintiff's Rebuttal Evidence

4. The Plaintiff recites, in his sworn Declaration accompanying his Separate and Concise Counter-Statement of Material Facts, a completely different set of eye-witness recollections, claiming that he was not given any antibiotics on June 15, 1999, and was

3

not even operated on until the afternoon of June 16, 1999, and that he was discharged from Tripler with his "intestines literally hanging out."

5. Moreover, the Plaintiff attaches to his sworn Declaration copies of official Tripler records produced by the Government itself -- the "Order List" and the "Shift Care Reports" for his Ward -- evidencing that the Plaintiff was in fact administered no antibiotics on June 15, 1999, although Zosyn had been ordered, but the order was cancelled until the next day consistent with the Plaintiff's testimony that his surgery was delayed due to Dr. Cirangle having other commitments, and that his surgery by the "Gold Team" did not take place until the afternoon of June 16, 1999.

6. A careful reading of the Government's motion papers suggests that the Government is aware of that contradiction between the Tripler records produced to the Plaintiff and attached to Plaintiff's Declaration, and what was shown to its testifying medical experts, *supra*, for although beginning the moving memorandum at 1, with the statement that the Plaintiff's "gallbladder surgery . . . was performed at the TAMC on June 15, 1999," and thereafter repeating that claim, moving memorandum at 2, the Government proceeds nevertheless to contradict itself on the most contested material factual issue in the case, referring twice thereafter, moving memorandum at 14, to "the June 16, 1999 gallbladder procedure," and again twice, moving memorandum at 16, to "the June 16, 1999 procedure."

### D. The Government's Claims Lack Credibility

7. First, it appears that the Government or Tripler has falsified the Plaintiff's medical records. For example, it appears that testifying nurse Sanchez-Martinez could not have possibly administered Zosyn to the Plaintiff at 9:20 a.m. on June 15, 1999, as she says nevertheless in her Declaration, raising questions as to the veracity of the writings in her attached Exhibit "A", since the Ward 6B1's "Shift Care Report" (Exhibit 2

4

attached to Plaintiff's Declaration) recites that Zosyn was not even first scheduled to be given to the Plaintiff until 2:00 p.m. on June 15, 1999, and that was "not done."

8. Second, the Government's testifying medical providers have merely disagreed with some of Dr. Halford's findings, while disproving none of them, leaving his expert testimony enough in and of itself to defeat summary judgment.

9. Third, where there are factual discrepancies in the procedures used by a hospital and contradictions and disagreements among the experts regarding the timing of procedures, expert medical testimony is not even needed to take a medical malpractice case to the jury; see, *e.g.*, Peacock v. Samaritan Health Service, 159 Ariz. 123, 765 P.2d 525 (App. 1988).

10. Fourth, Rule 56(c) of the Federal Rules of Civil Procedure places a heavy evidentiary burden of proof upon the Government in summary judgment proceedings, providing for the entry of summary judgment where and only where:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

The initial burden, therefore, is always upon the moving party to prove the absence of every material fact, Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986); "all justifiable inferences are to be drawn" in favor of the opposing party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and courts in summary adjudication proceedings are continually instructed by reviewing courts *not* to make credibility assessments or attempt on their own to weigh conflicting evidence in advance of trial, Musick v. Burke, 913 F.2d. 1390, 1394 (9th Cir. 1990); T.W. Electric Service, Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 631 (9th Cir. 1987). Moreover, all allegations of material fact by the party opposing summary judgment are to be assumed true and

5

construed in a light most favorable to the plaintiff, Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

### E. Conclusion

11. For each and all of the above reasons, it is respectfully submitted that there are numerous material factual issues in genuine dispute in this action that at the very least require that the Government's Motion For Partial Summary Judgment be DENIED.

DATED: Honolulu, Hawaii; April 15, 2007.

                                                           GARY VICTOR DUBIN
                                                           Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEVIN MILNES, ) | CIVIL NO. 02-00365 BMK |
| ) | |
| Plaintiff, ) | CERTIFICATE OF SERVICE |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date first written below I duly served the foregoing document upon the following person by hand delivery as follows:

Edric M. Ching, Esq.
Assistant U.S. Attorney
Room 6-100, Federal Bldg.
300 Ala Moana Blvd.
Honolulu, Hawaii 96850

*Attorney for Defendant*
*United States of America*

DATED: Honolulu, Hawaii; April 16, 2007.

GARY VICTOR DUBIN
Attorney for Plaintiff
Kevin Milnes