EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

EDRIC M. CHING #6697
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
E-mail: edric.ching@usdoj.gov

Attorneys for Defendant
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KEVIN MILNES, | ) | CIVIL NO. 02—00365 BMK |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S REPLY TO PLAINTIFF |
| | ) | KEVIN MILNES' MEMORANDUM IN |
| vs. | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTION FOR PARTIAL SUMMARY |
| UNITED STATES OF AMERICA, | ) | JUDGMENT; DECLARATION OF EDRIC |
| | ) | M. CHING; EXHIBITS "E"-"K"; |
| Defendant. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| | ) | Date:  April 27, 2007 |
| | ) | Time:  2:00 p.m. |
| | ) | Judge:  Barry M. Kurren |
| _____ | ) | |

DEFENDANT'S REPLY TO PLAINTIFF KEVIN MILNES'
MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT

Defendant UNITED STATES OF AMERICA, by and through its

attorneys, the United States Attorney for the District of Hawaii

and Assistant United States Attorney Edric M. Ching, and hereby

submits its Reply to Plaintiff Kevin Milnes' Memorandum in

Opposition To Defendant's Motion For Partial Summary Judgment

("Memo in Opp.").

I.      ARGUMENT

      A.      The Timing Of The Gallbladder Procedure Did Not
            Violate The Standard Of Care

      1.      Plaintiff's Attempt To Create A Genuine Issue Of
            Material Fact Regarding The Timing Of The June 15,
            1999 Gallbladder Procedure Must Be Disregarded

A party opposing a motion for summary judgment cannot create a genuine issue of material fact by submitting a contradictory declaration which appears to be offered to avoid summary judgment.  U.S. v. TRW Rifle 7.62 x 51 mm, 447 F.3d 686, 692 (9th Cir. 2006).

Plaintiff has clearly attempted to "create" a genuine issue of material fact by asserting that the gallbladder surgery occurred on June 16, 1999 in his Declaration submitted in support of the Memo in Opp.  See Declaration of Kevin Milnes ("Milnes Dec.") at paragraph 16.  Plaintiff also stated that he was scheduled to undergo surgery during the afternoon of June 15, 1999 but it was canceled because the surgery team was "tied up with other surgeries" and "nothing would be done until a sonogram was performed and that the sonogram tech would not be available until 7 a.m. on June 16, 1999.  Id. at paragraphs 9 to 11. Plaintiff denied that he had ultrasound testing prior to June 16, 1999.  Id. at paragraph 11.

These statements contradict two statements given by Plaintiff shortly after the gallbladder procedure.   In

a Statement In Support of Claim attached to a Federal Torts Claim

Act "Claim For Damage, Injury, Or Death" dated July 19, 1999,

Plaintiff, stated, under penalty of perjury, that

> "on Jun 14 99, check into the VA also Tripler Hospital
> US Army.  They found grangeneous gallbladder that
> almost killed me on **Jun 15 1999.**"

<u>See</u> Claim For Damage, Injury Or Death, attached as Exhibit "2" to
Plaintiff Kevin Milnes' Separate and Concise Counter-Statement of
Material Facts dated April 24, 2006 and attached hereto as
Exhibit "E".

Similarly, in a July 7, 1999 correspondence to the

Department of Veterans Affairs[1], Plaintiff stated:

> I arrived in Honolulu, HI on June 13, 1999, and at
> about 9:00 p.m. I had opakapaka and steak at Sizzler's
> on Kalakaua.  Five hours later, I was sick as a dog,
> had terrible pain on the right side, felt nausea, and
> vomited a lot.
>
> At 11:00 a.m. the next day, I showed up at the VA
> Federal Building Clinic to see my favorite doctor, Dr.
> Eddie Soliai, who had always taken good care of me over
> many past years. I really thought it was food
> poisoning.  At the VA Clinic they tried hard for three
> hours to cure the pain, which did not work.  X-rays
> showed constipation beyond capable, and Dr. Soliai
> referred me to Tripler US Army hospital.
>
> The same day, Monday, June 14, 1999 at 4:30 p.m., I
> ended up with lab work, X-rays, cat scan, some guess
> work, and a lot of pain on my right side which never
> passed away.  **It was on Tuesday morning, June 15, 1999,
> when the sonogram scan revealed the gallbladder
> failure.  In the afternoon, I finally got some pain
> killer of to or with Dr. Robert Lum, under Dr.**

---

[1]During his January 13, 2006 deposition, Plaintiff admitted
that he wrote and signed the July 7, 1999 correspondence.  <u>See</u>
Exhibit 10 at 132:23-133:13.  Plaintiff testified that the
content of the July 7, 1999 was true and correct except for some
spelling and grammatical errors.  <u>Id.</u> at 133:14-134:7.

> **Cirangle, to do laporoscopy or  – the worst possibility – to cut me again, which they did.  At that time they told me my gallbladder was dead, and nothing else..."**

See Exhibit 10 at 132:23-134:7; July 7, 1999 correspondence from Plaintiff to the Department of Veteran Affairs, a true and correct copy of which is attached hereto as Exhibit "F" (emphasis added).

The contents of Plaintiff's Declaration are not consistent with the these prior statements.  In the July 7 correspondence and July 19, 1999 Statement, Plaintiff stated that the gallbladder procedure occurred on June 15, 1999.  However, in his Declaration, Plaintiff claimed that his gallbladder procedure was delayed to June 16, 1999 because the surgery team was busy and a sonogram could not be performed until the next morning.  Curiously, in his July 7, 1999 correspondence and July 19, 1999 Statement, Plaintiff noted the sonogram occurred on June 15, 1999 and he never mentioned that his gallbladder procedure was delayed.

Even Plaintiff's own expert also stated that the gallbladder procedure occurred on June 15, 1999.  Dr. Halford's report stated that care at the TAMC began on June 14, 1999 and:

> "He was admitted and appropriate orders were apparently entered, including an order for the antibiotic Zosyn. In my review of the records, however, there was not documentation of the antibiotic being administered before the surgical procedure **the following day."**

See Exhibit "D" (emphasis added).

Plaintiff's attempt to claim that typographical errors

4

in Defendant's Memorandum in Support of the Motion creates a genuine issue of material fact must be disregarded.  Although Defendant regrets the above-referenced errors, it is clear that the admissible evidence (declarations and exhibits) submitted by Defendant consistently indicated that the gallbladder procedure occurred on June 15, 1999.

These inconsistent statements are clear attempts by Plaintiff to create genuine issues of material fact. Accordingly, even viewing the evidence in the light most favorable to Plaintiff, Plaintiff's assertion that the gallbladder procedure occurred on June 16, 1999 must be ignored.

> 2.    Even If The Gallbladder Procedure Occurred On June 16, 1999, Plaintiff Has Failed To Establish A Genuine Issue of Material Fact Regarding The Timing Of The Gallbladder Procedure

A party opposing summary judgment must demonstrate that the fact in contention is material, i.e., that it might affect the outcome of the suit under the governing law, and that the dispute is genuine, _i.e._, the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

In this case, even if Plaintiff established that the gallbladder procedure occurred on June 16, 1999, Plaintiff has failed to establish a violation of the standard of care.  Dr. Limm has established that performing a gallbladder procedure within seventy-two hours of the patient's admission is within the standard of care.  See Declaration of Whitney Limm, M.D. ("Limm

Declaration") at paragraph 19.  Dr. Halford has not disputed Dr. Limm's opinion nor did he state the relevant standard of care in his May 25, 2005 report.  See Exhibit 7.  Accordingly, even if the gallbladder procedure occurred on June 16, 1999, the timing of Plaintiff's gallbladder procedure was within the standard of care as it occurred within seventy-two hours of his admission into the Tripler Army Medical Center ("TAMC").

Plaintiff is clearly unqualified to testify as to whether documents were altered and has not presented any expert testimony on this subject.  As such, Plaintiff's claim that the TAMC records were altered must be disregarded pursuant to FRE 701 and 702.

Even if Plaintiff was qualified to testify on this subject, the basis for Plaintiff's unsupported claim that Dr. Cirangle "doctored" the medical records is weak, at best.  See Milnes Declaration at paragraph 17.  Plaintiff apparently relies on two documents to claim that the TAMC records were altered: 1) an operative report prepared on June 16, 1999 and transcribed on June 17, 1999 which stated that it was revised on August 19, 1999 and 2) a TAMC emergency department intake record for treatment received on June 24, 1999.  See Exhibits 3 and 4.

Plaintiff points to a reference that the operative report was revised to make a conclusory claim that the portion of the operative report regarding the date of the gallbladder

procedure was altered.  However, Plaintiff presents no evidence as to what portion of the report was revised, much less that the portion of the report listing the date of the gallbladder procedure was altered.

With regard to the Emergency Department intake form, Plaintiff's claim that the report was altered to indicate that the gallbladder procedure occurred on "15 June 1999" lacks merit. Plaintiff has produced no evidence indicating that this entry was altered in any matter.  Plaintiff also ignores that two lines below that entry, another entry states that Plaintiff underwent an "open chole" (gallbladder procedure) "last Tuesday" (which was June 15, 1999).  <u>See</u> Exhibit 4.

As noted above, even Plaintiff's own expert, after reviewing Plaintiff's TAMC records, stated that the gallbladder procedure occurred on June 15, 1999.  <u>See</u> Exhibit 7.

Thus, it is clear that Plaintiff failed to establish a genuine issue of material fact that the timing of Plaintiff's gallbladder procedure violated the standard of care.

> B.   Plaintiff Has Failed To Set Forth Admissible
>       Evidence That Defendant Violated The Standard Of
>       Care Regarding The Administration Of Antibiotics
>       <u>To Plaintiff In A Pre-Operative Setting</u>

Plaintiff unsuccessfully attempts to create a genuine issue of material fact regarding whether antibiotics were administered to Plaintiff prior to the gallbladder procedure by 1) referencing the claim of his expert, Dr. Halford, that "in the

review of his records, however, there was no documentation of this antibiotic (Zosyn) before the surgical procedure the following day" and 2) Plaintiff's unsupported allegation that he was never administered antibiotics prior to the gallbladder procedure. See Exhibit 7 and Milnes Declaration at paragraph 7.

Once again, Plaintiff's attempt to create a genuine issue of material fact must be disregarded by the Court. First, Dr. Halford's assertion that he did not review documents indicating that antibiotics were administered is insufficient to create a genuine issue of material that no antibiotics were provided to Plaintiff. Curiously, the records containing the notation made by Juan J. Sanchez-Martinez indicating that the Zosyn was administered were produced to Plaintiff's counsel and it is unclear as to whether this document was provided to Plaintiff's expert by Plaintiff. See Declaration of Juan J. Sanchez-Martinez ("Sanchez-Martinez Declaration"), Exhibit "A" and a correspondence dated June 9, 2005, a true and correct copy of which is attached hereto as Exhibit "G".

Second, Plaintiff's conclusory statement that no antibiotics were administered prior to his gallbladder procedure must be disregarded because he lacks personal knowledge to testify as to this subject. Plaintiff's bases for his opinion are records indicating that several orders for the administration of antibiotics were canceled. Once again, Plaintiff clearly

8

ignores the notation made by Juan J. Sanchez-Martinez that Zosyn
was administered during the morning of June 15, 1999.  <u>See</u>
Sanchez-Martinez Declaration and Exhibit "A".

        Plaintiff also lacked first hand knowledge of what
drugs were administered to him.  During his January 13, 2006
deposition, Plaintiff admitted that he did not ask the nurses
about the content of certain bags of liquid which were
administered to him.  <u>See</u> Exhibit 12 at 43:6-46:20.  Also,
neither his July 7, 1999 correspondence nor his July 19, 1999
Statement referenced the failure of TAMC personnel to administer
antibiotics to Plaintiff in a pre-operative setting.  Once again,
the contents of his Declaration serve to create a genuine issue
of material fact and summary judgment should be granted in favor
of Defendant on this issue.

        C.    Plaintiff Has Failed To Present Any Admissible
              Evidence To Rebut Dr. Eron's Opinion That The
              Application Of Dakin's Solution Did Not Cause
              Injury To Plaintiff

        Plaintiff has failed to set forth any expert testimony
on this issue that satisfies the tests set forth in <u>Daubert v.</u>
<u>Merrell Dow Pharmaceuticals</u>, 509 U.S. 590 (1993) ("<u>Daubert</u>") and
<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 43 F.3d 1311, 1315
(9th Cir. 1995) ("<u>Daubert II</u>").

        In the first part of the <u>Daubert</u> test, Plaintiff must
establish by a preponderance of his expert findings are "derived

by the scientific method," and that his expert's work product amounts to "good science." Daubert, 509 U.S. at 590 n.9.[2]

Second, Plaintiff must show that the report establishes that his expert's general theories brought to bear on the subjects of standard of care, breach, and causation have been subjected to peer review and publication.

Third, the Plaintiff's submitted report must establish that his expert's claim of a specific required level of care can be and has been established.

Lastly, Plaintiff's expert testimony must establish whether the establishment of such viewpoints is sufficiently recognized. Id. at 593-94.

Dr. Halford has only made conclusory statements that the use of Dakin's Solution caused an "intense reaction" and delayed Plaintiff's wound healing. See Exhibit 7. Dr. Halford has failed to reference the data that he relied on (assuming that he relied upon scientific data to derive his opinion) to conclude that Dakin's Solution caused Plaintiff to experience an "intense reaction" and delayed the healing of his wound.

Contrary to the lack of documented bases for the opinion of Defendant's general surgeon expert, Dr. Eron, an infectious disease specialist, has opined, based on several

---

[2] Defendant interprets the term "scientific" to mean in the instant context "nursing care" supervision knowledge.

10

published studies, that Dakin's Solution contains sodium
hypochlorite and that sodium hypochlorite sensitivity is unusual.
See Declaration of Lawrence Eron, M.D. ("Eron Declaration") at
paragraph 26.  Dr. Eron also opined that there is no evidence
that the use of sodium hypochlorite delays wound healing.  See
Eron Declaration at paragraph 27.

Dr. Eron also opined that the timing of the irritation
to Plaintiff's wound made it unlikely that the skin irritation
was caused by the use of sodium hypochlorite.  Id. at paragraphs
28 and 29.  The above-referenced opinions set forth by Dr. Eron
were supported by published scientific studies.  See footnotes
one to three in the Eron Declaration.  Based on the published
scientific data, Dr. Eron opined that the rash surrounding
Plaintiff's wound was caused by the dressing applied to his
wound.  Id. at paragraph 31.

Based on the total lack of evidence that Dr. Halford's
opinion was based on a scientific method and is "good science",
Plaintiff has failed to present expert testimony that satisfies
the criteria set forth in Daubert and Daubert II.  Accordingly,
this Court must disregard Dr. Halford's report on this issue and
grant summary judgment in favor of Defendant on this issue.

      D.   Plaintiff Failed To Create A Genuine Issue Of Fact
          That Dr. Sakaguchi Breached The Standard Of Care
          In Hawaii By Treating Plaintiff As An Outpatient
          On June 24, 1999

Plaintiff has not disputed that the standard of care in Hawaii to is treat a wound dehiscence without evisceration or the infection by the application of dressings, via secondary closure or secondary intention in an outpatient setting.  Plaintiff responded to Request For Admission #25 as follows:

> ADMISSION NO. 25:  Admit that treating a wound dehiscense without evisceration or infection by the application of dressing, suturing it a later date (secondary closure) or allowing it to close on its own (secondary intention) in an outpatient setting is within the standard of care in Hawaii
>
> ADMIT ___X____      DENY _____
>
> (With Comments[3])

Plaintiff attempts to defeat summary judgment as to Dr. Sakaguchi's care by claiming that he should have been admitted as an outpatient as his intestines were "literally hanging out" when he presented himself to the TAMC emergency department on June 24, 1999.  <u>See</u> Milnes Dec. at paragraph 20.

Plaintiff's self-serving description of the condition of his intestines does not raise a genuine issue of material fact

---

[3]Comments: Under ideal circumstances, with no surgery delays, with no diagnosis of Infection I, infection II (please see Operation Reports of 6/26/99 and 07/02/99), and gangrenous gall bladder (please see Discharge Summary Note dated 07/02/99), one can probably apply some benefit of the doubt to secondary closure and secondary intention in an outpatient setting. However, it was not my case and is, it was not applicable to my critical situation.  Dr. Halford admitted he would be treating me in a different way, considering my condition.

<u>See</u> Request For Admissions #25.

regarding whether he exhibited wound evisceration on June 24, 1999. Plaintiff does not have the expertise to opine that he exhibited wound evisceration and is precluded from providing admissible evidence on this issue pursuant to Rule 701 and 702, FRE.

Even Dr. Halford, in his report, did not claim that Plaintiff exhibited wound evisceration when being examined by Dr. Sakaguchi on June 24, 1999. In fact, Dr. Halford claimed that Dr. Sakaguchi's action put him "at risk for evisceration." See exhibit 7. Nor did Dr. Halford state that Dr. Sakaguchi's care violated the standard of care. Id.

In fact, Dr. Halford did not even identify the standard of care for wounds that were dehisced but not eviscerated. Rather, Dr. Halford stated that Plaintiff should have been admitted as an inpatient. More specifically, Dr. Halford stated:

> #4. ...In my opinion, this patient should have been admitted on the 24th especially with a dehiscence of this degree. The delay allowed for increased bacteria colonization, added discomfort, and **put him at increased risk of evisceration.**

See Exhibit 7 (emphasis added).

Dr. Halford's opinion that Plaintiff should have been admitted as an inpatient must be disregarded as, once again, no evidence has been presented that this opinion is based on a scientific method and is good science pursuant to Daubert.

Accordingly, Defendant urges the Court to grant summary

judgment in favor of Defendant on this issue.

    E.    The Administration Of Antibiotics To Plaintiff Did
          Not Violate The Standard Of Care

Dr. Halford's vague reference to culture reports and the absence of culture reports must be disregarded. In his discussion of this subject, Dr. Halford did not opine that a standard of care was violated but merely stated that the standard of care is to "base the selection of the appropriate antibiotic upon the identification of what bacteria one is attempting to eliminate to be certain your selection is correct." See Exhibit 7.

However, in this case, Dr. Halford's analysis is moot as there was no evidence of any infection and the antibiotics administered were merely surgical prophylaxis. See Eron Dec. at paragraphs 16 and 25.

    F.    Dr. Halford's May 25, 2005 Must Be Disregarded

Dr. Halford's May 25, 2005 report cannot be considered by the Court for the purposes of this Motion. A party opposing a motion for summary judgment must set forth evidence that is admissible in evidence to create a genuine issue of fact. See Rule 56(e), FRCP. To have a witnesses' testimony to be deemed admissible, the testimony must be made under oath pursuant to Rule 603, FRE. In this case, the opinions set forth by Dr. Halford in his May 25, 2005 correspondence were not made under oath and is not admissible for the purposes of this Motion.

Without any admissible expert opinions, this Court must grant summary judgment on all claims brought by Plaintiff against TAMC.

G.    Plaintiff Has Failed To Reference His Failure To Timely To Answer Defendant's Request For Admissions

In the Memo in Opp., Plaintiff has not referenced his failure to timely respond to Defendant's Request For Admissions which deemed that the Requests are deemed to be admitted pursuant to Rule 36, FRCP. Since Plaintiff has failed to file a formal motion to have the admissions withdrawn and has not raised the issue in his Memo in Opp., Plaintiff has waived the right to argue that the admissions should be withdrawn.

II.    CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court grant this Motion and dismiss all claims brought by Plaintiff arising out of the care he received from TAMC.

DATED: April 23, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

/s/ Edric M. Ching
By_____
  EDRIC M. CHING
  Assistant U.S. Attorney

Attorneys for Defendant
UNITED STATES OF AMERICA

15

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
KEVIN MILNES,                  )     CIVIL NO. 02—00365 BMK
                               )
            Plaintiff,         )     CERTIFICATE OF SERVICE
                               )
     vs.                       )
                               )
UNITED STATES OF AMERICA,      )
                               )
            Defendant.         )
                               )
_____)
```

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that, on the date and by the method of
service noted below, a true and correct copy of the foregoing was
served on the following at their last known address:

          Served by Hand Delivery:

          Gary V. Dubin, Esq.
          55 Merchant Street, Ste. 3100
          Honolulu, HI 96813

          Attorney for Plaintiff

     DATED:  April 23, 2007, at Honolulu, Hawaii.


                              /s/ Coleen Tasaka-Shoda
                              _____