GARY VICTOR DUBIN 3181
Dubin Law Offices
55 Merchant Street, Suite 3100
Honolulu, Hawaii 96813
Telephone: (808) 537-2300
Facsimile: (808) 523-7733
E-Mail: gdubin@dubinlaw.net

Attorney for Plaintiff
Kevin Milnes

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEVIN MILNES,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | CIVIL NO. 02-00365 BMK<br><br>PLAINTIFF KEVIN MILNES' **POST-HEARING SUPPLEMENTAL MEMORANDUM IN OPPOSITION** TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; EXHIBITS "A" AND "B"; CERTIFICATE OF SERVICE<br><br>DATE:    April 27, 2007<br>TIME:    2:00 p.m.<br>JUDGE:   Barry M. Kurren<br><br>Trial Date: September 24, 2007 |

**PLAINTIFF KEVIN MILNES' POST-HEARING
SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

A. Introduction

1. On May 15, 2007, after hearing the April 27, 2007, oral arguments concerning the Defendant's motion for partial summary judgment, the Court entered an Order finding that with regard to the testimony of Plaintiff's expert, "the content of Dr. Halford's statements indicate that there are very likely genuine issues of material fact remaining in this case" and that based on these opinions by Dr. Halford, the Court is inclined to deny Defendant's motion for summary judgment."

2. In its Order, the Court specifically referred to three expert conclusions rendered by Dr. Halford: (a) that "there was no documentation of [pre-operative] antibiotic being administered before the surgical procedure . . . ." and that "if this is true it is a breach of the standard"; (b) that he "was not able to locate any culture reports" identifying bacteria that were present in Milnes' wounds, and that "[w]ithout any culture identification one is led to believe that an inappropriate antibiotic may well have been selected and thus led to his subsequent problems," and (c) that Tripler's order directing Milnes to use Dakin's solution was "[a] definite negligent action."

3. Nevertheless, the Court generously allowed the Defendant leave to take the oral deposition of Dr. Halford to question him about the scientific bases of his opinions pursuant to the requirements set forth in <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 590 (1993), and the Defendant's counsel did so on June 19, 2007 -- the complete deposition transcript of which is set forth in Exhibit "A", with the critical portions discussed below highlighted in yellow, the Court allowing the Defendant and the Plaintiff leave solely for that purpose and not for the purpose of re-briefing the entire motion.

### B. Dr. Halford Fully Documented The Scientific Bases For His Expert Opinions.

4. In his oral deposition, with respect to his first expert opinion, *supra*, which was found highly persuasive by the Court following the April 27, 2007, hearing, Dr. Halford testified that he had "reason to dispute that this record entry [by Juan Sanchez Martinez]" (page 16) stating that he gave the Plaintiff an antibiotic prior to his surgery was correct, as "it was never ordered in the computerized record . . . so that's why I say I'm not sure it was really given or not. There seems to be conflictual items in the medical record about this" (page 17), and in any event Dr. Halford concluded that it was below the standard of care not to have given an antibiotic *earlier*, "immediately" as soon as the Plaintiff was admitted to the hospital (pages 19, 22, and 23) which was long

before Juan Sanchez Martinez claims to have administered the first antibiotic; and in support thereof Dr. Halford referred to two well-respected textbooks in the field, written by Dr. Cameron (page 20) and by Dr. Sabiston (page 21) "which [medical procedure] is the current standard accepted by everyone" (page 24).

5. With respect to his second expert conclusion, *supra*, Dr. Halford testified at his oral deposition that "culture reports" should have been taken "at the time of the operation," but were not (page 29), and taken especially when the Plaintiff was in the Tripler emergency department (page 30), and in his opinion the resulting "infection played a significant role" in the Plaintiff's wound's inability to heal, a "much larger role" than any other cause (page 31), and "was the culprit here" (page 35), notwithstanding a percentages-game Defendant's counsel tried to us to confuse Dr. Halford with, again referencing the leading textbooks in the field in support of his opinion, concluding that the physicians at Tripler should have known better since "sprinkling antibiotic power" on the Plaintiff's wound, that showed that they were concerned enough about infection, yet took no cultures for years while treating the Plaintiff for infection nonetheless (pages 36-37).

6. And finally, with respect to Dr. Halford's third opinion, *supra*, which the Court concluded possessed sufficient merit to defeat Defendant's motion for summary judgment, he substantiated his view that the use of Dakin's solution was definitely negligence on the part of Tripler with reference to several exhibited American College of Surgery written textbook principles and practices (page 45), which he called "the Bible of surgery" (page 47), referring to what he termed "a double whammy" (page 45) in that Dakin's solution is not only toxic and was a bad choice in the first place, but especially so where, as here, the Plaintiff was known to have been allergic to its key ingredient bleach, with the predicable result being "delays" in healing (page 45), disagreeing

completely with the Defendant's expert, Dr. Eron (page 47), thereby at the very least establishing a material issue of fact in genuine dispute.

7. It is submitted that Dr. Halford's deposition transcript confirms that this Court's inclination was correct – that "the content of Dr. Halford's statements indicate that there are very likely genuine issues of material fact remaining in this case."

8. The Defendant's counsel elected not to take Dr. Halford's oral deposition at all, that is until faced with the likely defeat of its summary judgment motion, and then elected to do so only after this Court indicated that it would give the Defendant that missed opportunity.

9. Dr. Halford billed the Defendant for four hours of preparation time at $350 per hour (not knowing how long the deposition would last), and for 1.25 hours of deposition time at $500 per hour. That contrasts sharply with what the Defendant's treating physician, Dr. Cirangle, earlier demanded of the Plaintiff for the taking of his oral deposition, which in contrast was $800 per hour for preparation time and a minimum of $5,000 per each half-day of deposition testimony, plus his travel time (see Exhibit "B").

## C. Conclusion

10. Dr. Halford has substantiated the scientific bases for his expert opinions which were highlighted in this Court's May 15, 2007, Order as of most interest to the Court, and in fact in his deposition substantiated the scientific bases for all of his expert opinions previously submitted in this action. The Defendant's motion for summary judgment should be denied.

11. Additionally, the Government should not be allowed financially to profit from its double standard: refusing to pay Dr. Halford for his recent effort made necessary by the Government's own initial refusal and waiver of questioning of him previously as to his scientific proof, yet demanding of the Plaintiff, in payment for Dr. Cirangle's

preparation and one-half-day-minimum deposition time, **four times** what Dr. Halford, who occupies the position of Chief Surgeon at Queen's, has billed the Government for.

DATED: Honolulu, Hawaii; July 16, 2007.

                                                  GARY VICTOR DUBIN
                                                  Attorney for Plaintiff