IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KEVIN MILNES | ) | CIV NO. 02-00365 BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART |
| | ) | AND DENYING IN PART |
| vs. | ) | DEFENDANTS' MOTION FOR |
| | ) | PARTIAL SUMMARY |
| UNITED STATES OF AMERICA; | ) | JUDGMENT |
| and TRIPLER ARMY MEDICAL | ) | |
| CENTER | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Defendants' motion for partial summary judgment as to all claims made by Plaintiff regarding the health care he received from Tripler Army Medical Center. After careful consideration of the motion, the supporting and opposing memoranda, the arguments of counsel, and the supplemental briefing, the Court hereby orders that Defendants' motion for partial summary judgment be GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

Plaintiff Kevin Milnes ("Milnes") was referred to Tripler Army Medical Center ("TAMC") in June of 1999 for gallbladder surgery. He was admitted to TAMC on June 14, and surgery was performed on either June 15 or June 16. Milnes sustained a number of complications related to the surgery, and returned to the hospital several times in June and July of 1999. Milnes claims that ever since the surgery, he has experienced continued complications, and that the surgery has left him totally and permanently disabled. He claims that this harm is the result of TAMC's "substandard care, delayed operative surgery and negligent post-operative care." (Pl.'s First Amended Compl., filed Nov. 13, 2002.)

Defendants filed a motion for partial summary judgment which was heard on April 27, 2007. After the hearing, the Court requested additional briefing regarding some of the opinions offered by Milnes' expert, Dr. Peter Halford. Defendants deposed Dr. Halford, and additional briefing was filed by both sides on July 16, 2007.

## STANDARDS OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed

facts warrant judgment for the moving party as a matter of law.  See Fed. R. Civ. P. 56(c).  In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223 (9th Cir. 2000).  In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, it is only to determine whether there are issues to be tried.  Anderson, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.  See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987) (summary judgment must be denied if a rational trier of fact might resolve the issue in favor of the non-moving party).

## DISCUSSION

Defendants here have moved for partial summary judgment with respect to all claims made by Milnes regarding the health care he received from TAMC.  Under Hawaii law, expert testimony is required to prove medical malpractice.  Craft v. Peebles, 78 Haw. 287, 298 (1995).  Specifically, expert

testimony must be provided to show (1) that a standard of care was breached, and (2) that this breach caused harm to the plaintiff. Todd v. Shankel, 83 Fed. Appx. 952, 953-54 (9 th Cir. 2003) (stating that "[u]nder Hawaii law, in a medical malpractice action the plaintiff must prove both breach and causation through expert testimony"). For expert testimony to be accepted, it must satisfy the requirements set forth in Daubert v. Merrell Dow Pharm., 509 U.S. 590 (1993) ("Daubert") and Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II").

Here, in support of his claims, Milnes has produced an expert report by Dr. Peter Halford. Dr. Halford addresses six areas in which Milnes claims that a breach of the standard of care occurred: (1) the administration of pre-surgery antibiotics; (2) the timing of the gallbladder surgery; (3) the selection of pre-surgery and post-surgery antibiotics; (4) the timing of Milnes' re-admission after his first surgery; (5) the use of Dakin's solution; and (6) fabrication of the medical record. After careful review of all of the information before it, the Court concludes that there is no genuine dispute of material fact regarding areas (1), (2), (4), and (6), but that genuine issues of material fact, supported by expert medical testimony that meets the requirements of Daubert and Daubert II, does exist regarding issues

(3) and (5). Accordingly, summary judgment will be granted in part and denied in part.

I.  SUMMARY JUDGMENT GRANTED IN PART

    A.  <u>The Administration of Pre-Surgery Antibiotics</u>

Milnes first claims that he was not given antibiotics prior to surgery. Dr. Halford supported this claim in his initial expert report, stating that his review of the records showed "no documentation of [an] antibiotic being administered before the surgical procedure . . . ." (Pl.'s Concise Statement, Ex. 7.)  TAMC, however, claims that Milnes was in fact given the antibiotic Zosyn prior to surgery and provides the declaration of Juan Sanchez-Martinez in support of this claim.  In his deposition, Dr. Halford conceded that further review of the file did indicate that Sanchez-Martinez had given Zosyn to Milnes prior to surgery, and that Dr. Halford had no reason to believe that this had not actually occurred. (Halford Dep. 18.) Therefore, no genuine issue of material fact remains regarding whether Milnes was given an antibiotic prior to his surgery.

In his deposition, however, Dr. Halford stated that he believed that even if Milnes was administered Zosyn at 9:20 a.m. on June 15, as reported by Sanchez-Martinez, "it should have been started immediately once he was admitted

to the hospital," on June 14, or at least by 2:00 a.m. on June 15. (Halford Dep. 19.) TAMC objects to this opinion on the grounds that it was not previously raised by Dr. Halford in his initial expert report. Defendants contend that the deadline for submitting expert reports is long past, that Milnes failed to supplement Dr. Halford's initial report as required by Rule 26, that Milnes has provided no explanation for the tardiness of this opinion, and that allowing the new opinion to stand will severely prejudice Defendants.

The Court agrees with Defendants and will not consider the issue of the pre-operative timing of the antibiotics. This is not a young case. Milnes has had more than sufficient time to develop a theory of the case and to notify Defendants accordingly. The new theory asserted by Milnes would require significant additional work by Defendants and would likely force the Court to further postpone the long-postponed trial date. Moreover, Milnes has failed to provide any explanation for his failure to amend Dr. Halford's original expert report or otherwise notify Defendants of this new opinion. The Court hereby ORDERS that with respect to the issue of the administration of pre-surgery antibiotics, TAMC's motion for partial summary judgment be GRANTED.

B. <u>Timing of the Gallbladder Surgery</u>

Milnes also claims that his surgery was postponed due to elective surgery procedures taking precedence over his gallbladder surgery. In particular, he claims that his surgery took place on June 16, 1999, rather than on June 15, 1999. In his expert opinion, Dr. Halford states only that he "was not able to confirm this from my review of the records, but should this be validated on further investigation, then this would represent a serious breach of medical care standards." (Pl.'s Concise Statement, Ex. 7.) In his deposition, Dr. Halford further clarified that he was *not* testifying that the surgery did not occur on June 15. (Halford Dep. 28). Milnes provides no further evidence to validate his claim that the surgery did not occur on June 15, and so there is no genuine dispute of material fact on this issue. The Court hereby ORDERS that with respect to the issue of the timing of the gallbladder surgery, Defendants' motion for partial summary judgment be GRANTED.

C. <u>The Timing of Milnes' Re-Admission</u>

Milnes further claims that a one-day delay in re-admitting him to the hospital after the dehiscence of his wound caused him further harm. On June 24, 1999, Milnes returned to TAMC after his incision opened up. His wound was

treated, but he was not admitted at this time.  He was then called back to the hospital, and admitted on June 25, 1999.  Operative repair was performed on his injury on June 26.  In his expert report, Dr. Halford offered the opinion that "the delay allowed for increased bacteria colonization, added discomfort, and put him at increased risk for evisceration."  (Pl.'s Concise Statement, Ex. 7.)  During his deposition, Dr. Halford stated that he thought this delay was a violation of the standard of care.

> Dr. Halford fails, however, to provide any scientific evidence regarding whether, or by how much, this increased bacteria colonization might have caused Milnes' recuperation to be prolonged.  Moreover, Milnes admitted in responses to Defendants' Requests for Amission that TAMC's treatment of him as an outpatient on June 24 was within the standard of care in Hawaii.  Milnes has failed to raise a genuine issue of material fact regarding the timing of re-admission to TAMC, and the Court hereby ORDERS that Defendants' motion for summary judgment be GRANTED on this issue.

   D.  <u>Fabrication of the Medical Record</u>

> Finally, Milnes also claims that TAMC has fabricated and altered the medical record to, among other things, show that Milnes' surgery took place on the

15th although it really took place on the 16th, and that Milnes did not comply with doctors' orders. Dr. Halford stated in his expert report that "if indeed the medical staff fabricated this to shift blame, then there is no doubt that this is a breach of medical ethical and care standards." (Pl.'s Concise Statement, Ex. 7.)

Neither Milnes nor Dr. Halford are able to point to any facts showing this sort of fabrication, however. Thus, there is no genuine issue of material fact on this matter, and the Court hereby ORDERS that Defendants' motion for partial summary judgment be GRANTED as to the issue of fabrication of the medical record.

## II. SUMMARY JUDGMENT DENIED IN PART

### A. The Selection of Pre-Surgery and Post-Surgery Antibiotics

Milnes claims that many of his subsequent injuries were caused by TAMC's failure to administer the proper antibiotics to him both before and after surgery. In particular, Milnes claims that TAMC should have identified what specific bacteria had colonized Milnes' wounds and prescribed antibiotics to specifically target those bacteria. Dr. Halford stated in his expert report that he "was not able to locate any culture reports" identifying bacteria that were present

in Milnes' wounds.  (Pl.'s Concise Statement, Ex. 7.)  He further states that in his opinion,

> it certainly is a standard of care to base the selection of the appropriate antibiotic upon the identification of what bacteria one is attempting to eliminate to be certain your selection is correct.  Without any culture identification one is led to believe that an inappropriate antibiotic may well have been selected and thus led to his subsequent problems."

(Pl.'s Concise Statement, Ex. 7.)

In his deposition, Dr. Halford substantiated this opinion by citing scientific texts stating that infection could be a factor in causing wound dehiscence (see Halford Dep., Ex. 5), as well as other texts confirming that the standard of care in gallbladder surgery requires taking the culture of a wound to prescribe the appropriate antibiotic.  (Halford Dep. 35.)  While Defendants challenges his statements as being conclusory, Dr. Halford states that in his opinion, "this dehiscence was more than likely caused by an infection that wasn't treated properly rather than smoking or lifting something."  (Halford Dep. 33.)  The Court finds that this opinion is sufficiently supported by accepted scientific evidence and the facts at hand to raise a genuine issue of material fact.  Summary judgment is therefore DENIED as to the issue of the selection of pre-surgery and post-surgery antibiotics.

     5.  Dakin's Solution

Milnes further claims that the slow healing of his wound was caused by TAMC's instructions to Milnes that he clean his wound with Dakin's solution. Dakin's solution, which contains bleach, was prescribed to Milnes after he was released for the second time even though he advised TAMC that he was allergic to bleach.  (See Pl.'s Ex. 10, attachment to response for Request to Admission No. 26.)  Milnes claims that he used the Dakin's solution as ordered, and that it prevented his wound from healing properly because of his bleach allergy. (Pl.'s Ex. 10, response to Request for Admission No. 26.)

     Defendants contend, however, that the Dakin's solution did not cause any further injury to Milnes.  Defendants submit the testimony of their expert, Dr. Enro, who declares that "[w]hile sodium hypochlorite [(bleach)] sensitivity has been demonstrated to cause both delayed and immediate hypersensitivity reactions, this is unusual." (Enro Decl. ¶ 26.)  He further declares that in his opinion, "[i]t is unlikely that a four day course of Dakin's solution applied to Mr. Milnes' wound caused much of a problem."  (Enro Decl. ¶ 28.)  Dr. Enro's decision is based upon a number of scientific studies he cites and discusses.

To counter this argument, however, Milnes presents the deposition testimony of Dr. Halford. Dr. Halford states that regardless of Milnes' bleach allergy, Dakin's solution should not have been prescribed to Milnes. He cites a scientific text which states:

> There are a number of solutions that should never be placed on a wound. . . . A 0.5% solution of sodium hypochlorite (Dakin solution) has been demonstrated to be toxic to fibroplasts, to impair neutrophil function, and to slow epithelialization in open wounds.

(Halford Dep., Ex. 6.) While Defendants disagree that this is the standard of care and that Dakin's solution is harmful, Milnes has raised a genuine issue of material fact on this issue. Summary judgment on this issue is therefore DENIED

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment is GRANTED IN PART as to (1) the timing of the administration of antibiotics, (2) the timing of the surgery, (3) the timing of Milne's re-admission after the dehiscence of his wound, and (4) the fabrication of the medical record. Summary judgment is DENIED IN PART as to (1) whether the proper antibiotics were prescribed, and (2) whether the prescription of Dakin's solution was appropriate.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: July 18, 2007

Milnes v. United States of America; Civ. No. 02-365 BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT.